THE NATIONAL TRUST COMPANY OF THE CITY OF NEW YORK, Respondent, *v.* VALENTINE GLEASON et al., Appellants.

To maintain an action for money had and received, it is necessary to establish that defendant received moneys belonging to plaintiff, or to which he is entitled; it is not sufficient to show that defendant has, by fraud or wrong, caused the plaintiff to pay money to others, or to sustain loss or damage.

Where, however, several persons are parties to a forgery, by means of which another is induced to pay moneys to one of them, who, in obtaining the money, acts in behalf of those engaged with him in the forgery, the action is maintainable against all; it is not necessary to establish that each of the defendants received a share of the proceeds.

This result will not be varied by the fact that the common agent failed to account with his associates, and absconded with the proceeds.

In such a case, however, it is a question of fact, not of law, whether the several defendants who were guilty of complicity in the forgery were interested in the money received.

Mere complicity in a forgery or other crime does not, as matter of law, render every guilty party liable in a civil action for money had and received, or as borrower to every person who has been defrauded by means of such crime.

To charge a party in such action, the receipt of the money, either personally or by an agent, must be shown, and if by an agent the agency must be proved; his complicity in the crime is not the cause of action but simply an item of evidence tending to establish his interest in the proceeds.

A wife who merely aids her husband in the commission of the forgery, or a mechanic who is simply employed to execute some portion of the work and is paid for his services, having no concern with or interest in the fruits of the crime, is not liable in an action *ex contractu* for money advanced upon the forged instrument.

A conviction of a person of a felony in another State does not render him incompetent as a witness here.*

This rule is not affected by the fact that at the time he is offered as a witness the term of his sentence has not expired.

(Argued March 24, 1879; decided April 27, 1879.)

APPEAL from judgment of the General Term of the Superior Court, of the city of New York, affirming a judgment in favor of plaintiff, entered upon a verdict.

---

* This case was tried before the New Code (§ 832) made those convicted of felonies competent witnesses.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Ira Shafer*, for appellants. The testimony of Pettis was incompetent. (3 R. S. [Banks' 6th ed.], 994, § 43; Const., Art. 3, § 5; *Freeman* v. *Frank*, 10 Abb. Pr., 371; *Miller* v. *Finkle*, 1 Park. Cr., 377; *O'Brien* v. *Hagan*, 1 Duer, 664; 1 Greenl. Ev. [Redf. ed.], §§ 449, 461.) When an action is brought to recover damages for fraud, or to rescind a sale brought about by fraud, contemporaneous frauds and fraudulent representations may be shown to show the fraudulent intent. (*Cary* v. *Hotailing*, 1 Hill, 311, 316; 3 Greenl. Ev., §§ 111, 111*a*; id., § 94; *Hitchcock's Case*, 6 City Hall Rec., 43; *Luby* v. *Hud. R. R. Co.*, 17 N. Y., 131; 1 Phil. Ev. [Edw. id. of 1859], 202; *Anderson* v. *R. W. and O. R. R. Co.*, 54 N. Y., 339; *Worrall* v. *Parmalee*, 1 Comst., 519; *Page* v. *Cagwin*, 7 Hill, 361; *People* v. *Wiley*, 3 id., 194, 214; *Marquand* v. *Webb*, 16 J. R., 90; *Osgood* v. *Pres., etc., Manhattan Co.*, 3 Cow., 612; 17 N. Y., 131; 54 id., 339.) The allegations of the complaint being of a liability arising out of contract could not be sustained by proof of torts. (*Beard* v. *Yates*, 2 Hun, 466; *Walter* v. *Bennett*, 16 N. Y., 250; *Arnold* v. *Angell*, 62 id., 508; *Hollister* v. *Englehart*, 11 Hun, 446.) An amendment of the complaint on the trial, so as to confine the pleadings to the proof, would not have been permissible, because it would have changed the cause of action. (*Whitcomb* v. *Hungerford*, 42 Barb., 178; *Bush* v. *Filley*, 49 id., 600; *Ford* v. *Ford*, 53 id., 525; *Phillips* v. *Melville*, 17 N. Y. S. Ct. R., 211; *Smith* v. *Mayor & Co.*, 37 N. Y., 518.) Evidence of the acts and doings of the alleged conspirators was improperly received. (*Tappan* v. *Powers*, 2 Hall, 277, 296, 322–335; *Jones* v. *Baker*, 7 Cow., 445, 450; *Forsyth* v. *Edminston*, 11 How., 408; *Mussina* v. *Clark*, 17 Abb. Pr., 188; *McHenry* v. *Hazzard*, 45 Barb., 657; *Setzar* v. *Wilson*, 4 Ired. [Law], 501, 507; *People* v. *Brady*, 56 N. Y., 182, 188, 192; *Root* v. *Loundes*, 6 Hill, 518; *Campbell* v. *Butts*, 3

Comst., 173, 176; *Davis* v. *Talcot*, 2 Ker., 184.) · The court cannot, where the damages are entire, reverse in part and affirm in part. (Old Code, § 330; Code Civil Proc., § 1317; *Story* v. *N. Y. and H. R. R. Co.*, 2 Seld., 85.)

*Frederick Smyth*, for respondent. An issue cannot be raised upon an answer to a question put to affect the credibility of a witness. (*Bap. Ch.* v. *B'klyn. F. Ins. Co.*, 28 N. Y., 160.) The answer of the witness is conclusive and cannot be contradicted. (*Plato* v. *Reynolds*, 27 N. Y., 588; *Carpenter* v. *Ward*, 30 id., 243; *Gt. West. Turnpike Co.* v. *Loomis*, 32 id., 134; *Greton* v. *Smith*, 33 id., 250.) Defendants are jointly and severally liable to respond for the damage arising out of the illegal acts, or the acts of any one of them in furtherance of the conspiracy. (3 Greenleaf's Ev. [Red'f ed.], § 89, 97; 1 Wharton's Am. Crim. Law, § 702; *People* v. *Mather*, 4 Wend., 259; 2 Wharton's Am. Crim. Law, §§ 2351, 2352; 3 R. S. [Banks' 5th ed.], 988, § 33; id., 985, §§ 9, 10; *Commonwealth* v. *Hall*, 4 All., 307; *Cole* v. *Cole*, 50 How. P. R., 60; 1 Greenleaf's Ev. [Red'f ed.], 423, § 376; Code of Civil Proc., § 838.) The motion to dismiss the complaint as against Mrs. Gleason was properly denied. (3 R. S. [Banks' 6th ed.], 996, §§ 17, 18; Cooley on Torts, 115; 2 Bishop's Law of Married Women, § 258; *Cassin v. Delany*, 38 N. Y., 178.)

RAPALLO, J. The complaint in this action avers that about the 5th of July, 1873, the defendants were possessed of certain documents purporting to be forty-two first mortgage bonds of the Buffalo, New York and Erie Railroad Company, and that they obtained and received from the plaintiff $30,000 on the deposit of said pretended bonds with the plaintiff as security, but the plaintiff afterwards discovered that said bonds were forged and worthless, wherefore it alleges that the defendants have had and received to and for the use of the plaintiff the sum of $30,000, are indebted to the plaintiff in that sum. The complaint also

contains averments excusing the plaintiff from tendering the bonds to the defendants, and demands judgment for the $30,000, and interest.

The answers of the defendants who have answered deny the material allegations of the complaint, and the answer of the defendant Amelia A. Gleason sets up, in addition, that at the times of the transactions alleged in the complaint she was a married woman, the wife of the defendant Valentine Gleason.

The action was purely *ex contractu,* and one which, under the common-law system of pleading, would have been denominated an action of assumpsit for money had and received. No tort is alleged. There is no averment that the defendants had any connection with or knowledge of the forgery of the bonds, or that they were engaged in any conspiracy to defraud the plaintiff. No right or claim to damages for any wrong is set up, but simply an indebtedness for money had and received to the use of the plaintiff, or perhaps for money borrowed.

To maintain such an action it is necessary to establish that the defendants have received money belonging to the plaintiff or to which it is entitled. That is the fundamental fact upon which the right of action depends. It is not sufficient to show that they have by fraud or wrong caused the plaintiff to pay money to others, or to sustain loss or damage. That is not the issue presented in the action.

The plaintiff introduced evidence which, as is claimed, establishes that all the defendants were acting in concert, and were guilty in a greater or less degree of complicity in the forgery of the bonds. That the bonds were passed off upon the plaintiff by the defendant Charles Rolston, who received from the plaintiff the money advanced by it, and afterwards absconded.

Upon this evidence (throwing out of view the special questions raised as to the liability of the defendants who were married women, and of those defendants as to whom it is claimed that the evidence was insufficient to connect

them with the forgery) it was a question of fact for the jury whether Rolston, in receiving the money, was acting in behalf of those engaged with him in the forgery, and was carrying out the common purpose with the authority and for the benefit of all his confederates. It was not necessary to establish that each defendant personally received a share of the proceeds of the bonds. If the whole proceeds were received by a common agent, those for whose benefit it was thus received were jointly liable for the entire sum ; and this result would not be varied by the circumstance that the common agent failed to account, and absconded with the proceeds.

It was nevertheless a question of fact and not of law whether the several defendants who were guilty of complicity in the forgery were interested in the money received by Rolston. Mere complicity in a forgery or other crime does not, as matter of law, render every guilty party liable in a civil action, *ex contractu*, for money had and received, or as borrowers, to every person who has been defrauded of money by means of such crime. To charge a party in an action of that character the receipt of the money by him, directly or indirectly, must be established. His complicity in the crime is not the cause of action, but only an item of evidence tending to establish his interest in the proceeds.

These questions are fully presented in the case at bar, by exceptions to the charge, and by requests to charge. As to the defendants Mrs. Gleason and H. S. Corp, they were also presented by a motion for a nonsuit. Among other grounds specified on that motion were the third, that as to Mrs. Gleason, who was a married woman, the plaintiffs had not shown that she had received any portion of the money obtained by Rolston from the plaintiff, or that any portion of it went to the benefit of her separate estate, and the sixth, that there was no evidence that either of the defendants participated in the money obtained by Rolston from the plaintiff. Before the charge was delivered the counsel for all the defendants requested the court to charge, among other·

things, second, that to entitle the plaintiffs to a verdict they must establish that the defendants directly or indirectly aided or assisted, or were in some way knowingly implicated in obtaining, through Rolston, the money from the plaintiffs ; ninth, that if the jury believed that any defendant merely knew of the alleged intended crime of forgery, but did not participate in it or receive any of the proceeds, the jury would not be justified in finding a verdict against him.    The counsel for defendants Mrs. Gleason and Corp requested the court to charge : third, that the jury could not find a verdict against Mrs. Gleason unless they were satisfied on the evidence that the money obtained on the bonds passed to the plaintiff, or some part thereof, was received by her and went to the benefit of her separate estate ; fourth, that there was no direct evidence that Mrs. Gleason received any part of the money, or that any part of it went to the benefit of her separate estate ; eighth, that before the plaintiff can recover of either of the defendants in this action it must show that such defendant received some portion of the money obtained from the plaintiff on the forged bonds, either personally or by an agent, and if by an agent the agency must be proved, and in case of the absence or insufficiency of such proof as to any defendant such defendant was entitled to a verdict.

The court charged the jury, among other things, that the law of the case was, " that those who took part, a guilty part, no matter what that part was, how small or how great, in the commission of the forgery of the bonds of the Buffalo, New York and Erie Railway Company, were responsible in this case for the money that was obtained on any part of those bonds by the defendant Rolston.    That it was immaterial what the part taken was, provided anything was done by any one of the parties for the purpose of assisting in accomplishing the success of the forgery ; that each was responsible with the other."

In view of the requests made, directing the attention of the court to the point, it is very clear that the court held and

instructed the jury as the law of the case, that the mere fact of a person taking a guilty part, to any extent whatever, in the commission of a forgery, or in aiding in it, was sufficient to render him legally responsible, in an action for money had and received, to any person advancing money on the forged security ; and the case was in substance submitted to the jury, to be determined on the same principles as if the defendants were on trial on an indictment for forgery, or a conspiracy to defraud. However desirable it may be to render judgment against persons guilty of such offences, in any form of proceeding in which they may be brought before the court, whether civil or criminal, the law does not permit that indulgence of our desire to administer justice in the abstract, but confines us to prescribed forms of proceeding, applicable to particular cases. The right to a civil remedy is not under our statute, merged in the crime, but the civil right of action must be made out. The alleged cause of action in this case is the receipt by the defendants of the plaintiff's money, and I think the eighth request to charge correctly stated the law, and the charge should have been given, viz. : that to maintain the action the plaintiff must show that the defendants received some portion of the money either personally or by an agent, and if by an agent the agency must be proved. What should be sufficient evidence to authorize the jury to infer such an agency, is a different question. This request was not granted, but as it was made only on behalf of Mrs. Gleason and Corp. the exception is available only to them. The exception to the charge however, that all those who took any guilty part in the commission of the forgery were liable for the money, was taken in behalf of all the defendants. That the meaning of the judge was that a guilty complicity in the forgery, irrespective of any actual or constructive receipt of the proceeds would be sufficient to sustain this action, is clearly shown, and was conveyed to the jury, by the answer of the judge to the second request of all the defendants. viz. : that to entitle the plaintiffs to a verdict they must establish that the defendants

directly or indirectly aided, assisted or were in some way knowingly implicated, in obtaining through Rolston the money from the plaintiffs. To this request the judge replied that he so charged with this modification, "that when persons are engaged in the commission of a felony, the law is not very particular in ascertaining how far the consequences of that felony reach, to the knowledge of those persons, but if they commit a felony they are responsible for all the natural consequences that flow from that. Why do men forge bonds ? They forge them for the purpose of having money obtained from honest people upon them. Now if bonds being forged, even an unknown person should obtain money upon them, who is legally responsible ? why the person who forged the bonds."

The rule was thus broadly laid down that any person who forges or aids in the forgery of an instrument is liable in an action *ex contractu*, for money had and received, to any person who may advance money upon the forged paper, without regard to the question who got the money, and even if the person is unknown. However sound the rule of responsibility laid down may be in respect to the criminal offence, or perhaps as applicable to an action for damages for an injury caused by the crime, it cannot be sustained as applicable to an action for money had and received or money borrowed. This modification was excepted to on behalf of all the defendants. To the ninth request on behalf of all the defendants, that if the jury believed that any defendant merely knew of the alleged intended crime of forgery, but did not participate in it or receive any of the proceeds, the jury would not be justified in finding a verdict against them, the judge replied : "That is the law gentlemen if you can imagine such a case, and if a party stands by during the commission of a felony or a part of it, and merely knows that it is going on and does not participate in it. There must be some assistance, by the presence, or by some act or advice or help of the party, to implicate in the crime, and if there is any act, as I said before — any act or advice or assistance

given, which is given for the purpose of effecting the felony, it makes the party doing that, or saying that, guilty of complicity."

That part of the request which touches the subject of the receipt of the proceeds, is not noticed, and in connection with the other parts of the charge it clearly appears that in the view of the learned judge, any advice or assistance by presence, by saying anything, or otherwise, in the commission of a felony, whereby a third party is defrauded of money, is sufficient to make the offender liable in this form of action, no matter who receives the proceeds.

Not a single authority has been cited in support of the theory on which the case was submitted to the jury. All the authorities cited by the plaintiff's counsel relate to actions for conspiracies and torts, and in his points he treats this as an action for damages for a conspiracy. But it is impossible to sustain this position, as the complaint contains no allegations showing any wrong done by the defendants, but rests purely and simply upon the allegation that the defendants received the money which was advanced upon the forged bonds, and are indebted for it as money had and received to the plaintiff's use, and the point is expressly taken, throughout the trial, that the action cannot be maintained without proof of this essential allegation. If a man's goods are taken by an act of trespass, and are subsequently sold by the trespasser and turned into money he may maintain trespass for the forcible injury, or waiving the force he may maintain trover for the wrong, or waiving the tort altogether he may sue for money had and received. POLLOCK, C. B. (Rodgers v. Maw, 15 M. & W., 448.) And the rule is the same here, even if the goods are stolen. But to maintain the action for money had and received the goods must have been turned into money and the defendant must have received the proceeds, directly or indirectly. To maintain such an action it is necessary that a certain amount of money belonging to one person should have improperly come into the hands of another, and there must be some

privity between them. (Addison on Con., 1062; Greenl. on Ev., §§ 120–122.) It is difficult to conceive upon what legal principle a wife who merely aids and abets her husband in the commission of a forgery, or a mechanic who is employed to execute some part of the work and is paid for his services, having no concern with or interest in the fruits of the crime, can be held liable in an action *ex contractu* for money advanced upon the forged instrument, whatever may be their responsibility in a criminal prosecution for the offence.

As to Mrs. Gleason an action *ex contractu* can be maintained against her only by showing that she is liable upon some contract made in a separate business carried on by her, or with reference to her separate estate, or for which she has charged her separate estate ; and we think the point is well taken that there is no evidence of any such contract on her part, or at least that the question should have been submitted to the jury as requested. If there were evidence showing that she had received any part of the money and the jury had so found, she might possibly have been liable on the ground that the money went to the benefit of her separate estate, but no such question was submitted. The only evidence affecting her, to which our attention is called, was to the effect that she was the wife of one of the conspirators and was acquainted with the others, and that they were in the habit of meeting at the house where she resided with her husband, and part of the forging was done there, and that she was present when the forged seal of the Buffalo, New York and Erie Railroad Company was delivered to her husband and examined by him, and that the forged canceling stamp was delivered to her in a parcel to be delivered to her husband, though it does not appear that she knew what it was. These circumstances may tend to show some knowledge on her part of the transaction, but do not establish that she received any money for the benefit of her separate estate, nor make out a case of liability on her part in an action upon an implied contract.

The point relating to the incompetency of Pettis as a witness by reason of his conviction of a felony in the State of Massachusetts, is covered by the decision of this court in the late case of *Sims* v. *Sims* (75 N. Y., 466), in which it was held that a conviction in another State did not render a person incompetent to be a witness here. We do not think that the circumstance that at the time Pettis was examined as a witness the term of his sentence had not expired, distinguishes this case from that of *Sims* v. *Sims.*

We have not examined the numerous exceptions to rulings upon evidence, nor to the refusal to dismiss the complaint as to particular defendants on the ground of the insufficiency of the evidence to connect them with the crime, as, for the reasons already stated, the judgment must be reversed. Many of the exceptions are covered by the views before expressed, which show that proof of a conspiracy between the parties and of their complicity in the crime, and of any facts tending to show that Rolston in receiving the money was acting as the common agent or for the common benefit of all and with their assent, were competent for the purpose of establishing that the defendants received the money for which they are sued, and that the payment of it to Rolston was virtually a payment to all for whom he was acting. These were the material questions which should have been submitted to the jury.

The judgment might be sustained against the defendant Rolston, as the uncontroverted evidence shows that he received the proceeds of the bonds, but as it is stated that he was not served with process and has not appeared, a separate judgment against him alone cannot stand.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.