By the Court.—O’Gorman, J.
—This action is brought for the recovery of money alleged to have been received by the defendants for the use of the plaintiff, the amount claimed being $12,187.50.
The jury before whom the action was held rendered a verdict in favor of the plaintiff for $8,187.50. Motions were made on the part of the defendants for the dismissal of the complaint, to set aside the verdict, and for a new trial on the judge’s minutes, on the ground that the damages were excessive, and the verdict was contrary to the evidence. These motions were denied, and defendants appeal.
The material facts as they appear in evidence in support of the plaintiff’s claim are as follows : On April 1, 1880, the defendants executed a deed of copartnership for carrying on in the city of New York the general banking, brokerage and commission business, under the name of “McDowell Bros. & Company.” Previous to that time the business had been carried on by William McDowell, one of the defendants, alone, and the other defendants were his clerks and employees. The partnership deed provided that William O. McDowell was to contribute to the firm all the assets and interest in his business, and that neither of the partners should engage in any other business during the partnership, but each should give his whole time, thought and attention to the purposes of the partnership. For some time before the formation of the partnership the plaintiff had employed this W. O. McDowell to purchase securities for him, and on May 14, 1879, McDowell held in his hands certain bonds called “New Jersey Midlands,” the property of the plaintiff. W. O. McDowell wrote to plaintiff under that date that he could sell the “ New Jer *108 sey Midlands ” so as to give plaintiff a profit of about $2500, and thought he could invest the proceeds so as to make $10,000 turn into $15,000 in the next 90 days. About May 17,1879, plaintiff had an interview with this defendant, William O. McDowell, in which he told plaintiff that he knew a quiet, stagnant security in the market which could be purchased very low but would advance very soon to a respectable figure, and advised plaintiff to invest in it. McDowell did not then mention the name of the securities. Plaintiff thereupon instructed McDowell to sell the New Jersey Midlands, and McDowell under date of May 17, 1879, furnished the plaintiff with an account in writing showing a balance in his hands after the sale of the “ New Jersey Midlands” in favor of the plaintiff of $8,902.50. A few days afterwards, McDowell called on plaintiff at the store in which he was employed, handed him a check for $8,902.50, which check plaintiff indorsed, and passed back to McDowell in order that the amount should be invested in other securities.
About a week afterwards plaintiff called at McDowell’s office, and was told by McDowell that he had purchased for plaintiff New York and Greenwood Lake R. R. bonds to the amount of $40,000 par value at the rate of 13 cents on the dollar. Soon afterward, on July 5,1879, another interview took place between plaintiff and said William O. McDowell, in which the latter told the plaintiff that the New York and Greenwood Lake bonds had advanced to 15 cents on the dollar, while New Jersey Midlands had declined, and asked plaintiff whether he would change the investment, sell the New York and Greenwood Lake bonds and repurchase “New Jersey Midlands,” and plaintiff told McDowell to hold the New York and Greenwood Lake bonds and sell them at his discretion at the best market price. After that interview plaintiff called on defendant, W. O. McDowell from time to time during the winter and spring of 1880, to inquire whether the New York and Greenwood Lake bonds had been sold. McDowell said he had not sold them, and would not sell them until he *109 could get Ms price. In June, 1880, plaintiff again called on McDowell, and was told by Mm that he had sold these bonds, but he declined to state the price, and on being pressed for information on that subject, he said to plaintiff, “yon will be satisfied,” nothing more. For some months afterward, plaintiff continued to call on W. 0. McDowell for an account of sale of these bonds, but without success, until, on October 8, 1880, plaintiff received from, the firm of “ McDowell Bros. & Co.,” of which the defendants are the members, a written statement with the heading “Henry A. Bate, in account with McDowell Bros. & Co.,” in which plaintiff is credited, under date of June 26, 1880, with profits on purchase and sale of N. Y. & G. L. bonds less commissions $700, average interest 4 per cent, and with a balance in favor of plaintiff on the whole account of $4,397.75. This sum, defendants admit in their answer they had assumed as part of the business liabilities of William O. McDowell, and as due by their firm to the plaintiff.
Plaintiff claims that this account is untrue, in that it does not truly set forth the profits actually realized on the sale of the New York and Greenwood Lake bonds purchased for plaintiff and sold for him at the best market price according to plaintiff’s instruction.
It is in evidence that defendant W. O. McDowell declined to inform plaintiff of the price realized by the sale of these N. Y. & G. L. bonds, which in June, 1880, he told plaintiff he had sold, and up to the time of the examination of W. O. McDowell at the trial as a witness in behalf of the defendants, he refused to give plaintiff any information on that subject. He then gave this account of his relations with the plaintiff on the subject: Before any dealing with the plaintiff as to these N. Y. & G. L. bonds, W. O. McDowell had been the secretary of that company, was jointly interested with the firm of Phelps, Stokes & Co., in about $250,000 worth of them, and he had on hand $60,000 worth or more which belonged to himself. In the last named lot he gave plaintiff an interest to the extent of $40,000 at the price of thirteen cents on the dollar. Of this *110 alleged arrangement no entry whatever was made in any account book of W. O. McDowell. The bonds were to belong to plaintiff. McDowell was to act as broker, to receive no commission, but only one-half of the profit. W. O. McDowell further testified that he had frequent transactions as to H. Y. & Gf. L. R. R. bonds before and after his alleged arrangement with plaintiff. He had made efforts to create or improve the market for these bonds, and did improve it until it had reached a point at which he was willing to sell. That he made no distinction between the bonds in which he was interested jointly with Phelps, Stokes & Co., and those in which he was interested jointly with the plaintiff, and had no means of determining in which of them plaintiff was interested ; that he sold $5,000 of these bonds on December 24, 1879, and $15,000 on Januuary 15, 1880, at twenty cents on the dollar, and credited these sales to the transaction between him and plaintiff, realizing on these sales $1,400, one-half of which was credited to plaintiff, and one-half of which he took to himself at thirteen cents. That he sold some of the bonds, in which he and Phelps, Stokes & Co. were interested, at twenty-three and some at a fraction below twenty-four cents on the dollar, during January, 1880.
Witnesses on the part of the plaintiff testified that bonds of the H„Y. & GK L. R. R. were sold in the Hew York market in January, 1880, at twenty-five cents on^the dollar.
The questions as to the credibility of the various witnesses, the reconciling contradictions and discrepancies and the comparative weight to be attached to the testimony on both sides were left to the jury, and the question now to be considered is, whether the jury, if they preferred to believe the account of the transaction most favorable to the plaintiff, had evidence enough to justify them in finding, as they did find, that these U. Y. & G-. L. R. R. bonds were purchased for and belonged to the plaintiff, were sold for him at the best market price—-twenty-five cents on the dollar, and that the defendants, constituting the firm of “Me *111 Dowell Bros. &Co.” are liable to the plaintiff for the amount realized on the sale of said bonds at that rate.
As far as the relations between the plaintiff and William 0. McDowell are concerned, it was the duty of the latter, as the broker of the plaintiff, to act on plaintiff’s instructions and to sell the bonds at the best market price, using therein his best care and skill.
When, as he informed the plaintiff, he did sell the bonds, he was also bound to inform plaintiff, when requested by him, of the time or times of the sale and the amounts realized by the sale, or sales, and to exhibit toward plaintiff therein perfect good faith and candor; and his refusal to, give plaintiff the information on the subject of the sale of the bonds, for which plaintiff asked, and continuing that refusal up to the time of the trial of this action, raises a presumption authorizing the strictest construction of the evidence against him as to amount, value and price (Wylde v. R. R., 53 N. Y. 156; Story's Eq. J. §§ 308, 315, 316; Miller v. Kent, 23 Hun, 657).
The market value of the bonds in December and Janu1879, 1880, being proved to have been twenty-five cents on the dollar, or, as defendant W. O. McDowell testified, within a fraction of twenty-four cents on the dollar, at which rate he himself sold some of these bonds, it may be presumed that he then did his duty and" sold the plaintiff’s bonds at that rate.
In case of an agent failing to keep or produce accounts, all presumptions of value are against him.
The fact of W. 0. McDowell mixing and confusing plaintiff’s bonds with bonds in which he himself had an interest, leaves the jury at liberty to find that all the bonds sold by him up to §40,000, par value, were bonds of the plaintiff’s, and sold at the highest market price (Story's Eq. J. §§ 468, 628).
If William O. McDowell was the only defendant, the jury, in my opinion, had enough of evidence before them to warrant, as against him, the verdict which they have rendered in this case.
*112 The next question is, whether the other defendants, comprising, together with W. 0. McDowell, the firm of “McDowell Bros. & Co.,” have by any act of theirs so far assumed the liability of W. O. McDowell in this transaction,' as to be equally responsible with him for the sale of these bonds at the best market price.
In June, 1880, William O. McDowell informed plaintiff that he had sold the bonds. The partnership had been formed in April, 1880. On October 8, 1880, the firm of “McDowell Bros. & Co.” sent to plaintiff an account in writing, written by "Van Name, one of the partners, headed: “Henry A. Bate, in account with McDowell Bros. & Co.,” in which they set forth and admitted their liability as a firm to plaintiff for the purchase and sale of the plaintiff’s bonds, charged themselves with a cash balance in plaintiff’s favor, under date of May 19, 1879, of $8,902.50, being the same balance stated by William O. McDowell in his letter to plaintiff of May 17, 1869. They debit themselves with interest on the balance $472.87, being interest at four per cent, from the date last mentioned. They debit themselves, on June 26, 1880, with $700 profit on sale of the bonds, and with a general balance due plaintiff in account with them of $4,397.75.
By this conduct, in my opinion, they have adopted the whole transaction as their own, both the benefit derived from it, and the responsibility resulting from it as part of the business of William O. McDowell, and if they have erroneously, falsely, or fraudulently misstated or understated the proceeds of the sale of plaintiff’s bonds, they are, equally with William O. McDowell, bound to plaintiff to do him right.
If this view of the case be correct, I can see no error committed by the trial judge either in the admission or rejection of testimony, and no valid exception to his charge.
The jury seem to have calculated the amount of the verdict charging against defendants $10,000 as the selling value of the bonds $40,000 at twenty-five per cent. In my *113 opinion there was enough of evidence in the case to justify them in so doing.
A question was raised in this case whether an action for money received by defendants to the use of the plaintiff was the proper remedy, and whether an action for an account was not the correct form of action.
I see no force in that objection. The verdict in this case was founded on the belief entertained by the jury that the plaintiff’s testimony was true, that the bonds in question were his bonds, purchased for him, with his money, by the defendant, W. O. McDowell, and their reliance on the unqualified admission of said McDowell in June, 1880, testified to by the plaintiff and by McDowell himself, that he, McDowell, had sold the bonds, and on McDowell’s admission that he had sold such bonds in January, 1880, at a fraction below twenty-four cents on the dollar, and on the testimony of other brokers that such bonds at the same time had been sold in the New York market at twenty-five cents on the dollar; and on the facts admitted by said defendant that he had mingled and confused the plaintiff’s bonds with bonds of other parties for whom he dealt, and with his own, and also that he had persistently evaded and refused to perform his duty to plaintiff as his broker to give full and specific account of the sale made by him of the plaintiff’s bonds, and the prices realized therefrom.
On these facts the jury were justified in finding as matter of legitimate inference that the plaintiff’s bonds had been sold at the highest market price that could, with reasonable care, have been obtained for the same, and that the proceeds of such sales were in the hands of the firm of which said McDowell was a partner, and which, under their firm name, rendered an account to plaintiff, in which they acknowledged their connection with the purchase and sale of the plaintiff’s bonds and their liability to plaintiff for the same.
It was not necessary to establish that each defendant had personally received a part of the proceeds of these bonds. If the whole proceeds were received by W. O. *114 McDowell, one of the partners, all of them would be liable for the entire sum (National Trust Co. v. Gleason, 77 N. Y. 404).
This was a question for the jury, and was left to the jury by the trial judge.
The defendants object that the trial judge erred in allowing the plaintiff’s counsel to read as evidence on his behalf, a pdrt of the separate answer of William O. McDowell, without at the same time, and also as part of the plaintiff’s case, reading all other parts of the said answer which bore upon the subject.
The right of the defendants to read on their own behalf, all other parts of said answer that bore on the subject was recognized by the court. The defendant, W. O. McDowell, was examined at length on behalf of the defendants, and testified on the same subject, and the defendants had ample opportunity to put his whole answer' in evidence if they had been so advised (Mott v. Consumers Ice Co. 73 N. Y. 550.
The plaintiff was not bound to read the whole of the said answer as part of his case, and if, he were, the. objection was waived by the defendants, by their examination of William O. McDowell on their own part, and by his testifying at large on the subject- (Westlake v. St. Lawrence Mutual Ins. Co., 14 Barb. 212).
In this way, their whole case, in its aspect the most favorable to them, was presented to jury.
The judgment is affirmed, with costs, and the orders appealed from are also affirmed, with $10 costs.
Truax, J., concurred.