Barker, P. J.
—The bill of exceptions contains a statement of facts established by the evidence or admitted by the parties, from which, together with some additional facts found by the referee, it is to be determined whether the judgment in the plaintiff’s favor should be affirmed. Prom the record it cannot be determined with entire certainty whether the referee placed his legal • conclusion that the plaintiff was entitled to judgment upon the ground that the defendant received the plaintiff’s money to the amount of the recovery, which it was bound in equity and good conscience to pay to the plaintiff, or upon the defendant’s alleged special promise to pay'to the plaintiff the amount of the altered draft, less the amount for which the same was originally issued. It appears, however, by the referee’s written opinion, which was handed up by the plaintiff’s counsel with his points, that he was of the opinion that the plaintiff was entitled to recover on either of the grounds stated, but did not state on which one he placed his decision.
The plaintiff’s counsel has contended before us first, “ that the moneys paid by the drawee upon the draft were the plaintiff’s moneys; and that, second, the defendant, after the payment of the draft or a good consideration, promised the plaintiff to refund to it the moneys which were paid on the presentation of the draft, and that the judgment may be supported on either view of the case. The defendant disputes both of these contentions, and it is therefore necessary for us to examine both of these positions. As to the first proposition, the general rule is, that an action *633 for money had and received, may be maintained whenever it is established that the defendant had received money belonging to the plaintiff, or to which it is equitably entitled. National Trust Company v. Gleason, 77 N. Y., 400; Greenleaf’s Evidence, Vol. 2, § 117-122; Addison on Contracts, page 409; White v. Continental Bank, 64 N. Y., 319.
The defendant never received any money on the draft belonging to the plaintiff. The money paid to the defendant by the Manhattan Bank, on the presentation of the draft, was the money of the latter. The relation existing between a bank and its customer, in a legal sense, is that of a debtor and creditor. The funds which the customer supplies the bank for the purpose of enabling it to honor his drafts, are not usually held as a special deposit to be drawn against as such. As between banks keeping open current accounts with each other, it is the custom to credit the accounts with the deposits and collections made, and charge against the same all payments made upon the request or order of the bank making the deposit. Crawford v. West Side Bank, 100 N. Y., 50.
As between the drawer and the drawee of a draft which has been fraudulently altered after the same was issued, by raising the amount thereof, and paid by the drawee, the latter can only charge the account of the drawer with the original amount. Hall v. Fuller, 5 B. & C., 750; Smith’s Mercantile Law, 314; Crawford v. West Side Bank, 100 N. Y., 50.
The question as between these parties is one of authority, and the terms of the draft, when issued, limit the drawer’s liability to the amount originally inserted therein. The alteration of commercial paper, in any material part, vitiates the same as against the maker, and he is not liable in an action thereon, not even for the purpose of enforcing the same according to its original terms.
The forgery destroys the agreement. Parsons on Contracts, vol. 2, page 716; Daniels on Negotiable Instruments, §§ 1373, 1658; Booth v. Powers, 56 N. Y., 29.
These general and well settled propositions establish beyond all contention that the plaintiff was not injured by the alteration, nor did it become liable to the drawee of the draft by reason of the latter’s payment, of the same beyond the sum for which it was originally drawn by the plaintiff. ' The same legal propositions also demonstrate that the plaintiff had no right of action against the defendant, arising out of' the circumstance that the drawee paid thereon a greater sum on its presentation by the defendant' for its payment. The loss fell upon the drawee, unless, ’ under the circumstances, it had recourse to the defendant *634 for the purposes of indemnity. The liability of the defendant to the drawee for the full amount of the altered draft is well established, and the money paid to it on the presentation of the same may be recovered in an action for money had and received on the ground that the same was paid by a mutual mistake. The rule of law on which such liability is founded is as stated in some of the reported cases that the. drawee of a bill of exchange, by accepting and paying it, only vouches for the genuineness of the signature of the drawer and not of the body of the instrument.
The holder claiming to be entitled to receive the amount thereof, is held to a knowledge of his own title and the genuineness of every part of the bill, excepting the signature of the drawer, and the drawee has a right to rely upon the presumptive ownership of the holder and that it was issued as it may read on its presentation. White v. Continental National Bank, 64 N. Y., 316; Bank of Commerce v. Union Bank, 3 Com., 230; Canal Bank v. Bank of Albany, 1 Hill, 287; Marine Bank v. National City Bank, 59 N. Y., 69.
On the facts of this case the only party against whom the drawee had a right of action arising out of the payment of the draft on the supposition that it was genuine, was the defendant, to whom the money was paid by a mutual mistake. This cause of action has never been assigned to the plaintiff. The referee has not so found, nor is any fact stated in the bill of exceptions, which would justify such a conclusion.
The complaint avers that on payment of the altered draft, the drawee charged the same to the plaintiff’s account, and alleges that such payment was greater than the sum for which the draft was drawn, and such payment was without its knowledge and consent. The referee, in his report, finds that such payment was in fact made without the plaintiff’s knowledge or consent, and when informed of the alteration and payment of the draft to the defendant, the plaintiff notified the drawee that it would allow it credit for only seventeen dollars on account of such payment.
The defendant requested the referee to hold, as matter of law, that the money paid by the drawee of the draft in excess of the original amount of the same, was not the money of the plaintiff. This was refused and the defendant excepted. For this error the judgment should be reversed, unless it can be sustained upon the promise of- the defendant. It is nowhere stated in the bill of exceptions, or found as a fact by the referee, that the plaintiff ratified the payment of the altered draft.
The plaintiff relies upon the case of Talbot v. Bank of *635 Rochester (1 Hill, 295), in support of his argument. In that case the owner of a certificate of deposit, made payable to his own order, which he had indorsed, payable to another, and posted the same to the indorsee who never received it, and it came to the hands of a stranger, who forged the name of the indorsee, and sold it to the defendant who presented it to the bank that issued the certificate and received the money thereon. A recovery in the plaintiff’s favor was sustained upon the ground that he had never parted with his title to the certificate and the defendant received the money thereon and delivered up the certificate to the bank issuing the same; that the action of the defendant amounted to a conversion of the certificate and the plaintiff might waive the tort and bring an action for money had and received.
The case of Graves v. The American Exchange Bank, (17 N. Y., 205), was an action for a bill of exchange drawn upon the defendant and paid by it on a forged endorsement, and the recovery was sustained on the ground that the payee had never parted with his title. In these and similar cases the plaintiff’s right of action was based upon his title to negotiable paper which the defendant in each of these cases had wrongfully converted to its own use.
The other view of the case presented by the plaintiff may now be examined for the purpose of determining whether the judgment can be sustained on the defendant’s promise, contained in its first letter to the plaintiff, written on the 14th day of November, immediately after it had been notified that the draft had been raised. There is room for doubting whether the minds of the parties came to a mutual understanding as to the terms of the proposed agreement so as to be binding on either of them. But the referee has found that the defendant, by the terms of the letter just referred to, made a conditional promise to the plaintiff, to the effect that, if it would procure the said draft from the Manhattan Bank and send it to the defendant with an affidavit of the correct amount of the same, the defendant would pay the plaintiff the difference between the amount for which the said draft was issued and the amount to which it was raised, and relying on such promise it procured the draft and made the affidavit, and delivered the same to the defendant, and did not make public nor notify the Manhattan Bank of the alteration until after the defendant declined to pay the difference, which was on or about November 29, 1882. These conclusions of the referee cannot be reviewed on this appeal, as the bill of exceptions does not state that all the evidence or the facts bearing on the question are set forth therein.
The condition imposed by the defendant that the plaintiff *636 . should procure the draft from the Manhattan Bank of the draft made we think fairly implies that the plaintiff should ratify the payment by the drawee so that on the performance of the defendant’s promise to pay the plaintiff the difference it would be fully discharged from ah liability to the Manhattan Bank. Without such a purpose on the part of the defendant, in view of its liability to that bank as the drawee, its action would be without any reasonable or satisfactory explanation; nor can it be supposed that the plaintiff beheved that by procuring the mere possession of the draft without a ratification of its payment by the drawee, that the defendant would assume the liability of paying to it the face of the altered draft. It is manifest that the object of the defendant in making its offer was to procure the rightful possession of the draft and to become the owner thereof, so that it might retain it and use it as evidence against the forger, in either a criminal or civil action, if he could be found.
There is no pretense that the plaintiff ratified the payment by the drawee, but, on the contrary, disclaimed all obligation to recognize the payment, and permit the drawee to charge the same in its account, and the facts set forth in the bill of exceptions are consistent with and confirm this view of the case. One of the circumstances bearing on this question is very significant, and that is, that the defendant redelivered the draft and affidavit to the plaintiff on a peremptory demand for its return in case the defendant declined to make a remittance of the difference between the original and altered draft. The plaintiff retained the draft and gave notice to the drawee that it would not credit it for the full sum which it had paid on the altered draft, but only for the sum for which it was originally issued, and that it must act accordingly.
We think the acts and position of the plaintiff, as set forth in the bill of exceptions, amounted to a withdrawal of any acceptance which it may have made of the defendant’s offer, and the defendant was at liberty, at its election, to treat the contract as terminated.
After the draft was delivered to the plaintiff, the defendant entered into negotiations with the drawee concerning its liability to it arising out of the payment of the draft; and on the 10th day of December, paid to it the sum of $2,533.90, in discharge of its liability, and offered to prove that on the 21st day of December,-the drawee executed and delivered to it a written instrument releasing and discharging the defendant from all liability arising out of the payment of the draft, and that the plaintiff, within a short time after the execution of the release, had notice thereof. This evidence was objected to as immaterial, irrelevant and incompetent, and excluded, and the defendant excepted. We think the defendant was entitled to this evidence for the purpose of *637 meeting and explaining an item of evidence which the plaintiff had given relating to its dealings with the drawee relative to the draft after its payment. The bill of exceptions state that the plaintiff made proof, that on the 3d of January, 1883, the Manhattan Bank rendered its account current with the plaintiff from the 16th of December, previous to the said 2d of January, in which it credited the plaintiff with $2,533.90, on account of the said draft, and that the difference between that sum and $3,462.40 had never been paid by the defendant. The rejected evidence would have shown that the time the drawee remitted to the plaintiff the sum mentioned, the defendant had procured a release of its liability to the drawee and the plaintiff was notified of the fact, and would have tended to prove that the plaintiff did not receive the money from the drawee in ratification of the payment of the draft by its correspondent. This evidence would have established, that on returning the draft to the plaintiff, the defendant regarded the contract as abandoned, and that its negotiations with the drawee was in recognition of its liability to that bank, and that the plaintiff, at the time it received the credit, was notified of the source from which the drawee received the money, and the purpose for which it was paid by the defendant.
Judgment reversed, and a new trial ordered before another referee, costs to abide event.
All concur.