NEW YORK CENTRAL RAILROAD COMPANY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

Claim No. 23212.

Court of Claims, August 3, 1934.

*Clive P. Handy* [*William R. Stevens* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Joseph I. Butler, Assistant Attorney-General,* of counsel], for the State.

RYAN, J.  This claim is for damages sustained and expense incurred by the claimant in clearing away the wreckage that obstructed its railroad tracks and in erecting a temporary span in the overhead bridge structure No. U-289 which was broken down by two motor trucks and a trailer of the State Highway Department while passing over said structure on November 29, 1930.  The bridge structure carried the Ogdensburg-Morristown Part 2 County Highway No. 968 over and across the railroad of claimant's St. Lawrence division near the village of Morristown.  The bridge was part of the public highway.

It is conceded that the motor trucks were loaded with sand and were hauling a trailer loaded with a shovel and that they were owned by the State of New York and operated by its employees. The bridge was suspended by a pin-connected through truss seventy-eight feet, eight inches long, most of the truss being above the bridge floor.  The trailer hit the truss and the bridge went down. The damages to claimant have been stipulated as the sum of $4,500.

The clearing of the wreckage was accomplished within a few hours after the accident and the work of installing in place a temporary structure was completed on December 9, 1930.  Claimant's notice of intention was filed in the office of the Attorney-General on May 26, 1931, in the office of the Superintendent of Public Works on the same date, and in the office of the clerk of the Court of Claims on May 27, 1931.

The Attorney-General moves to dismiss the claim on the ground that it has not been filed in accordance with the provisions of section 12-a of the Court of Claims Act.  It is this motion which we are considering.

The theory of the learned Attorney-General is that the claim is based on the tortious act of a State employee and that the State has waived its immunity from liability only under section 12-a. If this theory is correct, we must dismiss the claim. An enabling act of the Legislature would have solved the difficulty occasioned by the failure of the claimant to file its claim within sixty days after the alleged injury occurred. However, no enabling act is before us and we must, therefore, find some other authority if we are to deny the State's motion to dismiss and grant claimant an award on what the Attorney-General apparently regards as a meritorious claim.

Under the Railroad Law as it has long stood authority was granted to the claimant or its predecessors in title, " To construct its road across, along or upon any stream, watercourse, highway, plank road, turnpike, or across any of the canals of the state, which the route of its road shall intersect or touch." Provided, it " shall restore the stream or watercourse, street, highway, plank road and turnpike, thus intersected or touched, to its former state, or to such state as not to have unnecessarily impaired its usefulness, and any such highway, turnpike or plank road may be carried by it, under or over its track, as may be found most expedient." (Railroad Law, § 8, subd. 4; § 21.)

The present statute is derived from chapter 140 of the Laws of 1850, sections 24 and 28. The duty of restoring the highway thereby enjoined is continuous. (*People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 302.) It is the theory of claimant's counsel that " by imposing upon claimant this continuing duty to restore the highway, the Legislature incurred a definite obligation on the part of the State to refrain from any act that would prevent, hinder or impair the performance of such duty by the claimant," and that " it is not important how or in what manner such performance is frustrated, whether by design or accident. The result is a breach of contract, or at least a violation of the duties or obligations imposed thereunder, forming the basis of a legal right to damages arising out of contract." We adopt the foregoing language from claimant's brief as it best states the position of the claimant.

The railroad company disclaims ownership of the bridge and in support of its disclaimer offered in evidence a notice from the State Department of Taxation and Finance of the fixing of the final full and equalized valuation of the special franchises owned and operated by it in the village of Morristown. This notice relates to " property across Main Street (H'way. Br.), Main Street, Morris Street, Northumberland Street. Note: Highway bridges are not included in the above valuation."

There being no proof to the contrary we must find that the bridge structure was part of the public highway and was being properly maintained by the claimant railroad in accordance with its legal duty. It collapsed through no fault of the claimant. Nevertheless the claimant promptly restored it. The State of New York has accepted that restoration and is enjoying the benefits thereof. Is there not an implied contract on the part of the State to pay therefor? Clearly the State is liable in damages for breach of its express contracts and this court has jurisdiction under sections 12 and 15 of the Court of Claims Act to determine that liability and make an award. To such cases the six months' limitation of filing applies. The same rule should apply to an obligation of the State implied from its acceptance of benefits received.

It may be true, as recited in the American Law Institute's Restatement of the Law of Contracts, chapter 1, section 5, that " Implied contracts must be distinguished from quasi-contracts, which also have often been called implied contracts or contracts implied in law. Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. *They are obligations created by law for reasons of justice.*"

It is for acts sounding in tort that there must be an express waiver of liability from immunity outside of and in addition to the provisions of sections 12 and 15 of the Court of Claims Act. (*Smith* v. *State of New York*, 227 N. Y. 405.) To provide a general express waiver of immunity section 12-a with its provisions for a sixty-day notice was passed.

It is true that the act of the State employees in permitting the trailer to hit the truss of the bridge may have been careless and negligent and, therefore, tortious, but there is no such allegation and no such proof appears. The claimant has proceeded on a different theory. It was long ago held that " If a man's goods are taken by an act of trespass, and are subsequently sold by the trespasser and turned into money he may maintain trespass for the forcible injury, or waiving the force he may maintain trover for the wrong, *or waiving the tort altogether he may sue for money had and received.* POLLOCK, C. B. (*Rodgers* v. *Maw*, 15 M. & W. 448.) * * * But to maintain the action for money had and received the goods must have been turned into money and the defendant must have received the proceeds, directly or indirectly." (*National Trust Co.* v. *Gleason*, 77 N. Y. 400, 408.)

Likewise, in conversion, " But the great weight of authority * * * is in favor of the right to waive the tort * * *. If the wrongdoer has not sold the property, but still retains it, the

plaintiff has the right to waive the tort and proceed upon an implied contract of sale to the wrongdoer himself, and, in such event, he is not charged as for money had and received by him to the use of the plaintiff. The contract implied is one to pay the value of the property, as if it had been sold to the wrongdoer by the owner. If the transaction is thus held by the plaintiff as a sale, of course the title to the property passes to the wrongdoer when the plaintiff elects to so treat it. * * * We think this rule should be regarded as settled in this state." (*Terry* v. *Munger*, 121 N. Y. 161, 165.)

If the rule is as above stated in trespass and conversion should not the claimant herein be permitted to waive the tort and sue for the amount it has expended in mending the damage done?

While an unusual question is here presented and we have been unable to find anything parallel in the records of our court we recognize the reasons of justice and find and decide that the continuing obligation imposed upon the railroad company carried with it a continuing obligation on the part of the State to refrain from interference with claimant's duty in maintaining the overhead highway structure.

For these reasons the motion to dismiss will be denied and an order may be submitted to that effect. To expedite an early determination of the matter a proposed decision should also be submitted providing for an award to the claimant in the amount agreed upon, together with interest thereon from December 9, 1930.

BARRETT, P. J., concurs.