## UNITED STATES *v.* COOK.

1. Timber standing on lands occupied by the Indians cannot be cut by them for the purposes of sale alone; though when it is in their possession having been cut for the purpose of *improving* the land—that is to say, better adapting it to convenient occupation—in other words, when the timber has been cut incidentally to the improvement, and not cut for the purpose of getting and selling it—there is no restriction on the sale of it.

2. The Indians having only a right of occupancy in the lands, the presumption is against their authority to cut and sell the timber. Every purchaser from them is charged with notice of this presumption. To maintain his title it is incumbent on him to show that the timber was rightfully severed from the land.

3. The United States may maintain an action for unlawfully cutting and carrying away timber from the public lands.

ON certificate of division in opinion between the judges of the Circuit Court for the Eastern District of Wisconsin.

The Menomonee Indians by agreement and treaty, negotiated on the 8th and 17th February, 1831, set apart and ceded to the United States certain of their lands in Wisconsin as a home for such of the New York Indians as might remove to and settle upon them. As the lands were intended for a home for the New York Indians, it was provided that the President should prescribe the time for the removal of the Indians to and settlement upon them, and, at the expiration of the time, apportion the lands among the actual settlers in such manner as he should deem equitable and just. If within the time prescribed they refused to accept the provisions of the treaty made for their benefit, or, having accepted, refused to remove from New York and settle on the lands, then the lands were to be and remain the property of the United States. It was also distinctly understood that the lands ceded were to be held by the tribes of New York Indians, under such tenure as the Menomonees held their lands, subject to such regulations and alterations of tenure as Congress and the President might direct. For this cession the United States paid the Menomonees $20,000.*

---

* 7 Stat. at Large, 343, 347.

On the 3d of February, 1838, the first Christian and Orchard parties of the Oneida Indians, to whom a part of the Menomonee cession had been apportioned, ceded to the United States all the lands set apart to them, except a tract containing one hundred acres for each individual, or in all about 65,000 acres, which they reserved to themselves, to be held as other Indian lands are held. Of this tract some three or four thousand acres have been occupied and cultivated as farming lands by individuals of the tribe in severalty with the consent of the tribe. Many of the Indians, including most of the young men, do not cultivate any of the lands as their own. A small number of the tribe cut timber from a part of the reservation not occupied in severalty, and made it into saw-logs, which they removed and sold to a certain George Cook. The United States brought this action of replevin against the said Cook to recover possession of these logs, and upon trial in the Circuit Court the facts here stated were established by the testimony; and, in addition, evidence was offered tending to prove that timber on the reservation had been cut and sold by the Indians of the tribe continually since 1838, with the tacit consent of the officers of the tribe.

Upon this state of facts the counsel of the United States asked the court to instruct the jury that the action could be brought and maintained. Upon the question of giving this instruction the judges were divided in opinion, and it was certified to this court for decision.

*Mr. S. F. Phillips, Solicitor-General, for the United States; no opposing counsel.*

The CHIEF JUSTICE delivered the opinion of the court.

We think the action was properly brought, and that it may be maintained.

The right of the Indians in the land from which the logs were taken was that of occupancy alone. They had no power of alienation except to the United States. The fee was in the United States, subject only to this right of occu-

pancy. This is the title by which other Indians hold their lands. It was so decided by this court as early as 1823, in *Johnson* v. *McIntosh.*\* The authority of that case has never been doubted.† The right of the Indians to their occupancy is as sacred as that of the United States to the fee, but it is only a right of occupancy.‡ The possession, when abandoned by the Indians, attaches itself to the fee without further grant.§

This right of use and occupancy by the Indians is unlimited. They may exercise it at their discretion. If the lands in a state of nature are not in a condition for profitable use, they may be made so. If desired for the purposes of agriculture, they may be cleared of their timber to such an extent as may be reasonable under the circumstances. The timber taken off by the Indians in such clearing may be sold by them. But to justify any cutting of the timber, except for use upon the premises, as timber or its product, it must be done in good faith for the improvement of the land. The improvement must be the principal thing, and the cutting of the timber the incident only. Any cutting beyond this would be waste and unauthorized.

The timber while standing is a part of the realty, and it can only be sold as the land could be. The land cannot be sold by the Indians, and consequently the timber, until rightfully severed, cannot be. It can be rightfully severed for the purpose of improving the land, or the better adapting it to convenient occupation, but for no other purpose. When rightfully severed it is no longer a part of the land, and there is no restriction upon its sale. Its severance under such circumstances is, in effect, only a legitimate use of the land. In theory, at least, the land is better and more valuable with the timber off than with it on. It has been *improved* by the removal. If the timber should be severed for the purposes of sale alone—in other words, if the cutting of the timber was the principal thing and not the incident—then

---

\* 8 Wheaton, 574.

† 1 Kent. 257; Worcester *v.* Georgia, 6 Peters, 580.

‡ Cherokee Nation *v.* Georgia, 5 Peters, 48.          § Ib. 17.

the cutting would be wrongful, and the timber, when cut, become the absolute property of the United States.

These are familiar principles in this country and well settled, as applicable to tenants for life and remainder-men. But a tenant for life has all the rights of occupancy in the lands of a remainder-man. The Indians have the same rights in the lands of their reservations. What a tenant for life may do upon the lands of a remainder-man the Indians may do upon their reservations, but no more.

In this case it is not pretended that the timber from which the saw-logs were made was cut for the purpose of improving the land. It was not taken from any portion of the land which was occupied, or, so far as appears, intended to be occupied for any purpose inconsistent with the continued presence of the timber. It was cut for sale and nothing else. Under such circumstances, when cut, it became the property of the United States absolutely, discharged of any rights of the Indians therein. The cutting was waste, and in accordance with well-settled principles, the owner of the fee may seize the timber cut, arrest it by replevin, or proceed in trover for its conversion.

The Indians having only a right of occupancy in the lands, the presumption is against their authority to cut and sell the timber. Every purchaser from them is charged with notice of this presumption. To maintain his title under his purchase it is incumbent on the purchaser to show that the timber was rightfully severed from the land.

That the United States may maintain an action for cutting and carrying away timber from the public lands was decided in *Cotton* v. *United States.** The principles recognized in that case are decisive of the right to maintain this action.

The answer of the court, therefore, to the question propounded by the Circuit Court, is

IN THE AFFIRMATIVE.

---

* 11 Howard, 229.