Weldon, J.,
delivered the opinion of the court:
Two separate claims in these cases were referred to the court together by the Secretary of the Treasury June 22, 1883, pursuant to the provisions of the second section of the Act of March 3, 1883, chapter 116, (22 Stat. L., 485), commonly called the “ Bowman Act.” The facts are identical except that the claimants are several.
On the 1st day of September, 1868, each claimant made an agreement in writing with the agent of the defendants to cut and stack on the Winnebago Indian Reservation, at such place on said reservation as might be designated by the agent of the defendants, “ 400 tons of good merchantable hay.”
In pursuance of this agreement, the claimant, by the 7th of September, cut and stacked on said reservation, at a point designated by the agent, “ 400 tons of good merchantable hay ” (some of the hay having been cut before the contract was reduced to writing). On the 2d of October, 1868, the claimant made application to the agent to measure the hay, as provided in the contract. The agent, for some trivial reason, deferred measuring it, and on the night of the 6th of October it was destroyed by fire.
The court finds that, notwithstanding there was no measurement by the parties acting in concert and none by the agent alone, there was in fact a measurement, and 400 tons of good merchantable hay was cut and stacked by the claimant under the agreement.
The contract provides that the hay shall be measured in the stack within twenty-five days after it has been stacked, and that in determining the number of tons it shall be measured “in the same manner and under the same rule which governs the quartermaster’s department in the measurement of hay in the Department of the Platte.”
On the 15th of September, by direction of the agent, a strip of land was plowed around the ricks to prevent fire.
*178 In each petition the claimant avers that he cut and stacked-100 tons of good merchantable hay upon the Indian reservation in the months of August and September, 1868.
By the averments of the petition and by the findings this is a claim for labor, and an action could be maintained at common law between ordinary litigants without declaring specially on the agreement. Upon the facts found by the court there was a complete execution and performance of the contract, except the payment of the mouey by the agent of the defendants.
There is no dispute as to the facts of this claim, and we are only called upon to determine questions of law arising from the legal effect and construction of the contract in controversy.
The right of each claimant to recover is resisted by the defense on the ground that the government had not received the hay at the time of its destruction and that the property was in the plaintiff, and therefore the consequence of the loss must fall on him. That theory might be applicable if this was a sale and purchase of property, but to hold it to be such would violate all reasonable intendments arising from the subject-matter - and terms of the agreement.
The grass on the Indian reservation certainly did not belong to the claimant, and if in fact it did not belong to the United States, for the purposes of this contract it must be treated as their property, because by the terms of the contract it was to be selected by the agent of the government. Nothing was to be done by the claimant except.to impress upon certain property furnished by the United States the improvement and consequence of his toil. He was to furnish labor and not deliver property.
It is also insisted that the time stipulated for measuring had not expired. By reference to the provision of the agreement in relation to the measurement it will be seen that it is not an exclusive measurement by one party or by a person specifically selected by the terms of the contract, but it is a measurement, according to certain rules, to be participated in by both parties.
The agent knew on the 7th of September that the hay had been cut and stacked, and the application to him on the 2d of October to measure it was in exact time, as the contract provided the hay should be measured within twenty-five days. *179 The 2d of October was the twenty-fifth day after the work had been done.
“The non-performance of a condition may be excused by the default of the feoffee or obligee, as if the feoffor or obligor makes a legal tender of the money to the feoffee or obligee at the day and place appointed and he refuses to accept.” (Comyn’s Digest, s. v. Condition, L. 4; 2 Chitty on Contracts, 1087, 1088.)
At the end of the limitation of twenty-five days the plaintiff sought the agent and asked him to make the measurement. He declined to do so at that particular time for personal reasons, and not because the time had not elapsed or the hay was not “good and merchantable.”
This claim comes within the spirit of the law announced by this court in Cooper’s Case (8 C. Cls. R., p. 199).
“Where a contract provides that the contractor shall be allowed and paid a reasonable price and compensation for his work, to be estimated and determined by a board of inspectors appointed by the quartermaster’s department, and the department neglects to appoint such a board, the contractor is bound to wait only a reasonable time, and may then bring his action to recover for his work.”
Courts are reluctant to enforce conditions in the forfeiture of compensation for value delivered or labor performed, and will not do so except in clear and imperative cases. We do not regard the condition in this case as a condition precedent, and therefore do not enforce it against the rights of the plaintiff.
While the contract contains some words indicating that it was to be received by the government after measurement, the agreement taken as a whole has the legal effect of being a contract for labor, to be measured as we have indicated.
The view taken in this case of the title and ownership of the property which was the subject-matter of the contract is sustained by the decisions of the Supreme Court of the United States and of this court. (United States v. Cook., 19 Wall., 591; Spencer’s Case, 10 C. Cls. R., p. 255.)
It is further insisted by the government that this is a claim “for unliquidated damages for the breach of a contract which the department have not, and never have had, jurisdiction to examine and settle.” In a very broad sense every suit founded on contract may be regarded as a suit for damages; but where in any proceeding the damages do not depend upon discretion *180 or the exercise of judicial judgment they are not unliquidated, but certain and specific.
The contract in each case provides for a certain amount of labor at a certain price, and if the facts sustain the allegation that the contract was performed, then it is the simplest process of mathematics to ascertain what is the measure of compensation.
Bach is a claim for a specific amount of money, and the amount reduces itself to a certainty if the court finds the allegation of the making and performance of the contract to be true.
No evidence of damages beyond the agreement appears in the findings; none is needed to make out the case of the claimant ; and the department in passing on the claim is not called upon to exercise any judgment or discretion.
The distinction between liquidated and unliquidated damages is clearly and admirably defined by this court in the opinion of Judge Davis in the case of Powers v. The United States (18 C. Cls. R., p. 275.) That was a claim for not furnishing supplies to be transported:
“An account is something which may be adjusted and liquidated by an arithmetical computation. * * * Claims for un-liquidated damages require for their settlement the application of the qualities of j ud gment and discretion. They are frequently, perhaps generally, sustained by extraneous proof, having no relations to the subject of the contract, which are common to both parties; as, for instance, proof concerning the number of horses, and the number of wagons, and the length of time that would have been required in performing a given amount of transportation.”
This same doctrine was announced by Judge Bichardson in the case of McKee (12 C. Cls. R., 555), and approved in the Powers Oase.
It is also argued by counsel for the government that there is a statutory reason why the claims could never have been legally allowed, by either the Interior or Treasury Department, and in support of this position he cites the Bevised Statutes:
“Sec. 3618. No advance of public money shall be made in any case whatever. And in all cases of contracts for the performance of any service * * * payment shall not exceed the value of the service rendered or of the articles delivered previously to such payment. ”
*181 This statute was intended to prevent a department from anticipating the performance of an agreement, by keeping the payment within the “value of the service,” and does not apply when there is a complete performance, although the government may not have received any benefit in consequence of the destruction of the subject-matter of the agreement.
The claimants were not insurers of the hay, and it being lost without their fault the consequences must not fall on them.
We find in each case that a contract, lawful as to its subject-matter, was made by a legally competent agent of the defendants; thatthe contractlias been performed in all its requirements by the claimants, and as we find no reason in law why they are not “worthy of their hire,” it is the conclusion of the court that the claimants are entitled to be paid the sum of $1,120 in each case, and the clerk will certify to the Treasury Department a copy of the findings of fact, the conclusions of law, and the opinion of the court.