UNITED STATES v. GARDNER.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1904.)

No. 1,040.

1. INDIANS—TITLE TO ALLOTTED LANDS—ACTION BY UNITED STATES TO RECOVER FOR TIMBER CUT.

Lands allotted to Indians in severalty subject to the conditions imposed by the general allotment act of February 8, 1887, c. 119, 24 Stat. 388, which provides that the United States shall hold such lands in trust for the allottee or his heirs for the period of 25 years, or so much longer as the President may determine, and then convey the same in fee to such allottee or his heirs, and that any conveyance or contract touching the same made before the expiration of such period shall be absolutely null and void, remain the property of the United States during such trust period, and it may maintain an action for timber unlawfully cut therefrom by a third person.

2. JUDGMENT NOTWITHSTANDING VERDICT—GROUNDS—INSUFFICIENCY OF EVIDENCE.

In the absence of any established practice of the state otherwise, a judgment notwithstanding the verdict can be granted only on the record, and the court in disposing of the motion therefor is not authorized to look to the evidence.

In Error to the Circuit Court of the United States for the Eastern Division of the District of Washington.

Jesse A. Frye, U. S. Atty., and Edward E. Cushman, Asst. U. S. Atty.

Happy & Hindman, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The defendant in error was the defendant in an action brought against him by the United States to recover the sum of $1,665.38 and interest, alleged to be the manufactured value of certain timber wrongfully and unlawfully cut and removed by the defendant in error from certain lands described in the complaint. These lands, prior to the cutting and removal of the timber, had been allotted to two certain Indians, 80 acres to each, pursuant to the act of Congress approved July 1, 1892, c. 140, 27 Stat. 62, and entitled "An act to provide for the opening of a part of the Colville reservation in the state of Washington and for other purposes," and the general allotment act of February 8, 1887, c. 119, 24 Stat. 388. The jury returned a verdict in favor of the United States in the sum of $300. The defendant in error moved the court for a judgment notwithstanding the verdict, for the reason that the verdict was contrary to law and the evidence, and for the further reason that the plaintiff in error had no capacity to sue, and no title to the lands from which the timber was removed. Upon the latter ground the court sustained the motion, and judgment was entered for the defendant in error.

Section 4 of the act of July 1, 1892, contains the following provisions:

"That each and every Indian now residing upon the portion of the Colville Indian reservation hereby vacated and restored to the public domain, and who is so entitled to reside thereon, shall be entitled to select from said vacated portion eighty acres of land, which shall be allotted to each Indian in severalty. No restrictions as to locality shall be placed upon such selections other than that they shall be so located as to conform to the congressional survey. * * * Such selections shall be made within six months after the date of the President's proclamation opening the lands hereby vacated to settlement and entry, and after the same have been surveyed, and when allotments have been selected as aforesaid and approved by the Secretary of the Interior, the titles thereto shall be held in trust for the benefit of the allottees respectively, and afterwards conveyed in fee simple to the allottees or their heirs, as provided in the act of Congress entitled 'An act to provide for the allotment of land in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and territories over the Indians, and for other purposes,' approved February eighth, eighteen hundred and eighty-seven, and an act in amendment and extension thereof, approved February twenty-eighth, eighteen hundred and ninety-one. * * * Provided that such allotted lands shall be subject to the laws of eminent domain of the state of Washington, and shall, when conveyed in fee simple to the allottees or their heirs, be subject to taxation as other property in said state." 27 Stat. p. 63.

Section 8 provides as follows:

"That nothing herein contained shall be construed as recognizing title or ownership of said Indians to any part of the said Colville reservation, whether that hereby restored to the public domain or that still reserved by the government for their use and occupancy."

Section 5 of the act approved February 8, 1887, contains the follow-

"That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the law of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: provided that the President of the United States may in any case in his discretion extend the period. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void." 24 Stat. 389.

The defendant in error contends that section 5 of the act of 1887, known as the "General Allotment Act," transferred the seisin and possession from the government to the allottees to all intents and purposes, and that the latter thereby acquired not merely a title, but an actual estate, which was created as effectually as if it had been done by a conveyance with livery of seisin at common law. In the recent case of the United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532, the court was called upon to consider what interest, if any, the Indian allottee acquired in the land allotted to him under that act. Referring to the fifth section, the court said:

"The word 'patents', where it is first used in this section, was not happily chosen to express the thought which, it is clear, all parts of the section being considered, Congress intended to express. The 'patents' here referred to (although that word has various meanings) were, as the statute plainly imports, nothing more than instruments or memoranda in writing, designed to show that for a period of twenty-five years the United States would hold the land allotted, in trust for the sole use and benefit of the allottee, or, in case of his death, of his heirs, and subsequently, at the expiration of that period— unless the time was extended by the President—convey the fee, discharged of the trust and free of all charge or incumbrance. In other words, the United States retained the legal title, giving the Indian allottee a paper or writing, improperly called a 'patent,' showing that at a particular time in the future, unless it was extended by the President, he would be entitled to a regular patent conveying the fee. This interpretation of the statute is in harmony with the explicit declaration that any conveyance of the land, or any contract touching the same, while the United States held the title in trust, should be absolutely null and void. So that the United States retained its hold on the land allotted for the period of twenty-five years after the allotment, and as much longer as the President, in his discretion, should determine."

Concerning the question whether such allotted lands were subject to taxation for state or municipal purposes, the court further said:

"If, as is undoubtedly the case, these lands are held by the United States in execution of its plans relating to the Indians, without any right in the Indians to make contracts in reference to them, or to do more than to occupy and cultivate them until a regular patent conveying the fee was issued to the several allottees, it would follow that there was no power in the state of South Dakota for state or municipal purposes to assess and tax the lands in question until at least the fee was conveyed to the Indians."

Later in the opinion the court considered the question whether the United States had such an interest in the controversy or in its subjects as to entitle it to maintain a suit to protect the Indians against local or state taxation. The court said:

"In view of the relation of the United States to the real and personal property in question, as well as to these dependent Indians still under national control, and in view of the injurious effect of the assessment and taxation complained of upon the plans of the government with reference to the Indians, it is clear that the United States is entitled to maintain this suit. No argument to establish that proposition is necessary."

The court further adverted to the facts that the lands are held by the United States in execution of its plans relating to the Indians without any right in the latter to make contracts in reference thereto, or to do more than occupy and cultivate them; that the Indians are yet wards of the nation, in a condition of tutelage or dependency; that they occupy the lands with the consent and authority of the United States, and under a national policy by which the Indians are to be maintained, as well as prepared for assuming the habits of civilized life and citizenship, in view of which considerations "there arises the duty of protection, and with it the power." The principles announced in that case are decisive of the present case, and lead directly to the conclusion that the United States had both the title to the land and the capacity to bring the action.

In Michigan Land & Lumber Co. v. Rust, 168 U. S. 589–592, 18 Sup. Ct. 208, 42 L. Ed. 591, the court said:

"Generally speaking, while the legal title remains in the United States, the grant is in process of administration, and the land is subject to the jurisdiction of the Land Department of the Government. * * * Wherever the granting act specifically provides for the issue of a patent, then the rule is that the legal title remains in the government until the issue of the patent. * * * It is, of course, not pretended that, when an equitable title has passed, the Land Department has power to arbitrarily destroy that equitable title. It has jurisdiction, however, after proper notice to the party claiming such equitable title, and upon a hearing, to determine the question whether or not such title has passed. [Citing authorities.] In other words, the power of the department to inquire into the extent and validity of the rights claimed against the government does not cease until the legal title has passed."

See, also, Brown v. Hitchcock, 173 U. S. 473, 19 Sup. Ct. 485, 43 L. Ed. 772; Hawley v. Diller, 178 U. S. 476, 20 Sup. Ct. 986, 44 L. Ed. 1157; Pine River Logging Co. v. United States, 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164; and United States v. Cook, 19 Wall. 591, 22 L. Ed. 210.

The defendant in error attempts to sustain the judgment on the ground that there was no evidence in the case to sustain the verdict. If there was no evidence to sustain the verdict, the remedy of the defendant in error was to move for an instructed verdict. A judgment notwithstanding the verdict must be granted, if at all, solely upon the record; and the court, in disposing of the motion, is not authorized to look to the evidence. Lewis v. Foard, 112 N. C. 402, 17 S. E. 9; Templeman v. Gibbs (Tex. Civ. App.) 25 S. W. 736; Stevens v. Logansport, 76 Ind. 498. At common law, a judgment non obstante veredicto could only be granted upon the application of the plaintiff, and upon a plea to the declaration which confessed the cause of action and set up matters in avoidance, which, upon their face, were insufficient to constitute a defense or a bar. German Ins. Co. v. Frederick, 58 Fed. 144, 7 C. C. A. 122. The rule has been relaxed in most of the states so far as to permit a judgment on the pleadings notwithstanding the

verdict in behalf of either the plaintiff or the defendant. We find no statute of Washington or decision of the Supreme Court of that state further relaxing the rule so as to permit the consideration of the evidence in the case.

The judgment will be reversed, and the cause remanded, with instructions to render judgment upon the verdict for the plaintiff in error.