## UNITED STATES v. DOOLEY et al.

(Circuit Court, E. D. Washington, S. D. December 13, 1906.)

INDIANS—LANDS ALLOTTED IN SEVERALTY—SUIT BY UNITED STATES TO PROTECT TITLE.

The United States may maintain a suit to protect the title to and possession of land allotted to an Indian under Act Feb. 8, 1887, c. 119, 24 Stat. 388, against adverse claims arising through an attempted conveyance

by the allottee, void under said act, which provides that the allottee's title shall not be alienated or incumbered for 25 years, and obligates the United States at the expiration of that time to convey the land by patent to the allottee or his heirs, "discharged of said trust and free of all charge or incumbrance whatsoever."

In Equity. On demurrer to bill.

A. G. Avery, U. S. Atty.

Ira P. Englehart, for defendants Dooley and Mullins.

WHITSON, District Judge. The complainant brings this suit, not only in its own behalf, but in that of the defendant Susan Swasey as well, by bill of complaint, the allegations of which, in so far as they need be noticed here, are as follows:

The defendant Susan Swasey, formerly Susan Stone, is a Yakima Indian, and an allottee of land upon the Yakima Indian Reservation, where she now resides. On the 10th day of December, 1904, she executed and delivered to the defendants Dooley and Mullins an instrument in the form of a warranty deed, which purports to sell and convey to said defendants a certain portion of her allotment on said reservation, which deed is duly recorded in the auditor's office of Yakima county, where said land is situate. The defendants Dooley and Mullins have taken possession of said land and are now occupying and using the same under an assertion of ownership, and have platted the same as a townsite, and are leasing and disposing of, and attempting to lease and dispose of, portions thereof, and are about to, by purported leases and deeds of conveyance executed by them, further lease and sell said premises or portions thereof, to the end that a town may be built upon and occupy the same. Prior to the 10th day of December, 1904, said Susan Swasey, in compliance with the act of February 28, 1891, c. 383 (26 Stat. 794), under the terms, regulations, and conditions prescribed by the Secretary of the Interior, executed leases to divers persons by the terms of which they were respectively, for a consideration and compensation to be paid to her, permitted to occupy a portion of said land embraced in the deed made by her to the defendants Dooley and Mullins. That it is the desire of the said Susan Swasey and the complainant, as her guardian, to further lease said premises or portions thereof. The defendants Dooley and Mullins have notified the tenants of said premises holding leases authorized by the Secretary of the Interior that they are the owners of the said lands and premises, and that the rent therefor must hereafter be paid to them, and if said rents are not so paid, both as to present and future rents, said tenants must vacate the premises. That the execution, delivery, and recording of said deed cast a cloud upon the title and rights of complainant and of the said Susan Swasey in and to said lands and premises, whereby said allottee and the complainant are prevented from securing tenants for said premises. That said defendants, so claiming title through said deed, threaten to and will, unless restrained, lease and convey, or attempt to lease and convey, said lands and premises, and parts or parcels thereof, to divers other persons, to be occupied as a town, which will compel the complainant to bring a multiplicity of suits and proceedings in order to protect said allotment and the complainant's

and the said allottee's right and title thereto, and will greatly embarrass the complainant in carrying out the trust imposed upon it by the provisions of the acts of Congress in respect to Indian allotments, as well as prevent the said allottee from being protected in the use and occupancy of her said allotment, the title to which is clouded by the said deeds, conveyances, and leases made by her to defendants, which are alleged to be void. Complainant prays that the deed so made by said allottee be declared void and set aside. That it be adjudged that the defendants Dooley and Mullins have no right, title, interest, or estate in and to the said lands and premises or any part thereof. That the title of the complainant be held good and valid, subject only to said allotment, and that the said defendants be enjoined and restrained from occupying said premises, or any part thereof, and from asserting any claim whatsoever thereto adverse to complainant or to the said allottee, which is supplemented by a prayer for general relief.

The defendants Dooley and Mullins demur to the bill for want of equity and jurisdiction in this court. While the grounds of demurrer are fully set out in varying form to meet, no doubt, any possible objection to the sufficiency of statement, yet the point urged, and upon which counsel relies in his brief, is that since the passage of the act of February 8, 1887, c. 119 (24 Stat. 388), the general government cannot maintain actions to protect the title or possession of the Indians, and it is therefore to this sole point that attention will be directed.

It has been strenuously and ably argued that it is sought by this suit to set aside a conveyance with wh'ch the parties are presumably satisfied. That in the absence of any specific allegations of fraud there ought to be no interference, and, indeed, in any event, there can be none such as complainant seeks, because the allottee, in accepting land under the law providing for allotments, thereby became a citizen of the United States and is no longer a ward of the government, but is entitled to all the rights, privileges, and immunities of other citizens under the provisions of section 6 of the act which entitles her to the benefits and renders her subject to the laws of the state, both civil and criminal. The contention that the relation of guardian and ward exists between the complainant and the allottee cannot be sustained, for the statute terminated that relation, at least in so far as it affects her personal acts and political status as an Indian. Such was the holding in the Matter of Heff, 197 U. S. 488, 25 Sup. Ct. 506, 49 L. Ed. 848. The argument that the same relation exists between the government and the Indians since as before the passage of the act was answered by Mr. Justice Brewer in delivering the opinion of the court, as follows:

"But the logic of this argument implies that the United States can never release itself from the obligation of guardianship; that, so long as an individual is an Indian by descent, Congress, although it may have granted all the rights and privileges of national and therefore state citizenship, the benefits and burdens of the laws of the state, may at any time repudiate this action and reassume its guardianship, and prevent the Indian from enjoying the benefit of the laws of the state, and release him from obligations of obedience thereto. Can it be that, because one has Indian and only Indian blood in his veins, he is to be forever one of a special class over whom the general government may in its discretion assume the rights of guardianship which it has once abandoned, and this whether the state or the individual himself con-

sents? We think the reach to which this argument goes demonstrates that it is unsound."

The right to maintain the suit must therefore rest upon other grounds than that of the relation of guardian and ward, but it does not follow that because such status has been abolished that the government is remediless. The authority rests upon another well-defined principle. The complainant is still vested with the legal title to the land, which, to quote from the act, it holds—

"in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or in case of his decease, of his heirs according to the laws of the state or territory where such land is located. And that at the expiration of said period the United States will convey the same by patent to said Indian or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever."

Continuing the discussion in the Heff Case, the court took notice of the contention that, because Congress had reserved the title of the Indian lands, the right to exercise control over the Indians themselves in a manner analogous to guardianship of the person was still retained as incidental to the title so reserved. And the distinction between that contention and the right to maintain a suit of this character was very clearly pointed out, as will appear from the following quotation:

"But it is said that the government has provided that the Indians' title shall not be alienated or incumbered for twenty-five years, and has also stipulated that the grant of citizenship shall not deprive the Indian of his interest in tribal or other property, but these are mere property rights and do not affect the civil or political status of the allottees. In United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532, we sustained the right of the government to protect the lands thus allotted and patented from any incumbrance of state taxation. Undoubtedly an allottee can enforce his right to an interest in the tribal or other property (for that right is expressly granted), and equally clear is it that Congress may enforce and protect any condition which it attaches to any of its grants. This it may do by appropriate proceedings in either a national or a state court. But the fact that property is held subject to a condition against alienation does not affect the civil or political status of the holder of the title. Many a tract of land is conveyed with conditions subsequent. A minor may not alienate his lands; and the proper tribunal may at the instance of the rightful party enforce all restraints upon alienation."

This authoritative construction gives full justification for seeking the relief prayed for. The Supreme Court emphasizes the right to this remedy by referring with approval to United States v. Rickert, supra, where the suit was sustained because the acts complained of constituted a cloud upon the title, as they do in this case. A conveyance to the demurring defendants and their possession under the conveyance, and conveyances and leases by them to divers persons for the purpose of building up a town upon the allotted land, would enable those in possession to claim under color of title, and embarrass the government in the performance of its undertaking to convey the title unincumbered. Section 5 of the act provides that at the expiration of 25 years "the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust, and free of all charge or encumbrance whatsoever." In order that this might be done, Congress fortified the provision by making any attempt at alienation void, in this specific language:

"And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void."

Protection of the obligation to carry out in an unhampered manner the undertaking to lease the land and account for the proceeds, as provided by the act of February 28, 1891, c. 383 (26 Stat. 794), and ultimately to convey the fee free from incumbrances, is the purpose of this suit. This object cannot be defeated by any act of the allottee, and one holding by such a tenure cannot nullify the express limitation which prohibits a conveyance, or any contract concerning the interest created by the preliminary patent; and the position that the construction placed by the Supreme Court upon the legislation providing for allotments has established a different rule is untenable. The authority of United States v. Gardner, 133 Fed. 285, 66 C. C. A. 663, which adopted the construction relied upon by the government here, has not, as argued by counsel, been in any way shaken or overturned. On the contrary, the rule there announced was in effect adhered to in the later case of National Bank of Commerce v. Anderson (C. C. A.) 147 Fed. 87; and United States v. Thurston County, Nebraska, 143 Fed. 287, 74 C. C. A. 425, holding a like view, was cited with approval.

Demurrer overruled.