### UNITED STATES v. KEMPF.

(District Court, E. D. Wisconsin. August 25, 1909.)

INDIANS (§ 38\*)—JURISDICTION OF FEDERAL COURTS—PROSECUTION FOR TRESPASS ON INDIAN LANDS.

Congress has the constitutional power to enact laws to punish criminally the unauthorized cutting of timber on unallotted lands in an Indian reservation within a state, the title to which is in the United States, and to confer jurisdiction on the federal courts to enforce the same.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 38.\*]

On Motion in Arrest of Judgment. This is an indictment under section 5388, Rev. St. (U. S. Comp. St. 1901, p. 3649), for cutting timber upon certain unallotted lands, being a portion of the Menominee Indian reservation in the state of Wisconsin.

E. J. Henning, Asst. Dist. Atty., for the United States.
Paul J. Winter, for defendant.

QUARLES, District Judge. It is contended in support of the motion that the state of Wisconsin was admitted into the Union upon the same footing, possessing the same powers and jurisdiction, as one of the original states; that in the enabling act the federal government made no reservation of jurisdiction over the Indian country lying within the territorial limits of the state; that therefore the criminal jurisdiction of the state extends to all parts of its domain, and that, for the punishment of the crime of which the defendant was convicted, resort must be had to the Wisconsin statute and Wisconsin courts; that the Wisconsin statute has provided an appropriate remedy for the alleged wrong, and that the federal government must be held to have relinquished its jurisdiction over the territory in question.

This contention is bottomed upon the case of state v. Doxtater, 47 Wis. 278, 2 N. W. 439, wherein it was held that an Oneida Indian might be tried and punished in the state court for adultery committed within the reservation. The soundness of this decision has been questioned in this court, in Re Blackbird (D. C.) 109 Fed. 139, 142. It has been practically repudiated by the Supreme Court in United States v. Kagama, 118 U. S. 375, 6 Sup. Ct. 1109, 30 L. Ed. 228, and appears to have been entirely ignored by Congress in subsequent legislation. If this decision were good law, it would not rule the instant case, and therefore merits no further consideration. The United States has assumed guardianship over these Indians, and is vested with the title to large tracts of land which it holds in trust for its dependent subjects. This trust imposes the highest duty to preserve and protect the property of its wards. The government is not only a sovereign, but also a landed proprietor, charged with the preservation of the public domain. It is to conserve these interests that the act was passed under which the defendant is prosecuted.

We may start with the fundamental proposition that the Constitution of the United States, and any proper legislative enactment based thereon, become the supreme law of the land, before which state statutes, if inconsistent therewith, must give way. Ableman v. Booth, 21 How. 506, 16 L. Ed. 169; McCulloch v. State of Maryland, 4 Wheat. 316, 4 L. Ed. 579. In Railroad Co. v. Husen, 95 U. S. 465, 471, 24 L. Ed. 527, the Supreme Court stated the rule as follows:

"But, whatever may be the nature and reach of the police power of a state, it cannot be exercised over a subject confided exclusively to Congress by the federal Constitution."

We now turn to the Constitution, and in article 4, § 3, find:

"The Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property of the United States."

In Jourdan v. Barrett, 4 How. 168, 11 L. Ed. 924, construing this provision, the court held that, Congress having the constitutional power to pass the law, it is supreme, and that Congress may prohibit and punish trespasses on the public lands. Having the power of disposal and of protection, Congress alone can deal with the title, and no state law, whether of limitation or otherwise, can defeat such title.

In Camfield v. United States, 167 U. S. 518, 17 Sup. Ct. 864, 42 L. Ed. 260, the court say:

"While we do not undertake to say that Congress has the unlimited power to legislate against nuisances within a state which it would have within a territory, we do not think the admission of a territory as a state deprives it of the power of legislating for the protection of the public lands, though it may thereby involve the exercise of what is ordinarily known as the police power, so long as such power is directed solely to its own protection. A different rule would place the public domain of the United States completely at the mercy of state legislation."

It has been a subject of dispute as to the civil remedies that the government was entitled to enforce where timber had been cut on the public domain. In Cotton v. United States, 11 How. 229, 13 L. Ed. 675, it was held that the United States may maintain a civil action for trespass on public lands. To the same effect is United States v. Cook, 19 Wall. 591, 22 L. Ed. 210. See, also, United States v. Gratiot, 14 Pet. 526, 537, 10 L. Ed. 573.

In United States v. Gardner, 133 Fed. 285, 66 C. C. A. 663, it was held that such a civil action could be maintained by the government to recover the value of timber unlawfully cut from lands of a reservation, although such lands had been allotted; and such action may be maintained in the federal court. This case is differentiated from United States v. Hall and Stevens (recently decided here) 171 Fed. 214. That case concerned the Oneida reservation, where the lands had been allotted, and the question was whether the government could legitimately exercise the police power over such allotted territory. In the instant case the criminal statute does not invade the police power of the state, but involves only the protection of the public domain where the title of the United States is absolute.

In some of the civil cases above cited, it was contended that the remedy by indictment was exclusive, and that, like any other owner, the United States could obtain redress of a civil nature in the state court. I have been unable to find any case where the authority of Congress to provide for the protection of the public domain by means of a criminal statute, has ever been doubted.

During the argument great reliance was placed by defendant's counsel upon United States v. Penn (C. C.) 48 Fed. 669; but the facts are so different that the authority is not in point. There the cemetery was originally the property of the state of Virginia, and had been acquired by the government by means of a tax title, and not in the manner pointed out by article 1, § 8, of the Constitution. The exact point decided was that, no cession having been obtained from the state, the provision of the Constitution had not been complied with, and therefore the federal jurisdiction failed.

I can see no reason to doubt the jurisdiction in this case, and the motion in arrest of judgment must be denied.