# WILLIAMS, CHIEF, ET AL. *v.* CITY OF CHICAGO ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 128. Argued December 22, 1916.—Decided January 8, 1917.

At the date of the Treaty of Greenville, August 3, 1795, 7 Stat. 49, the right of the Pottawatomie Nation in lands on and near the shore of Lake Michigan now in Illinois was no more than a right of occupation.

If the occupancy ever extended to lands formerly submerged in the lake such as are the subject of this litigation, the court notices his-

torically that it was long ago abandoned and that for more than half a
century no pretense of such occupancy has been made by the tribe.
The treaty did no more than confirm the tribal right of occupancy, and
when that was abandoned all interest of the tribe and its members
was terminated.

THE case is stated in the opinion.

*Mr. J. G. Grossberg,* with whom *Mr. W. W. DeArmond*
was on the briefs, for appellants.

*Mr. Chester E. Cleveland,* with whom *Mr. Samuel A.
Ettelson* was on the brief, for the City of Chicago.

*Mr. W. S. Horton,* with whom *Mr. Robert Redfield, Mr.
W. D. McKenzie* and *Mr. Francis O'Shaughnessy* were on
the brief, for the Illinois Central Railroad Co. *et al.*

MR. JUSTICE MCREYNOLDS delivered the opinion of the
court.

The claim set up in this cause is without merit and the
amended bill was properly dismissed, upon motion, for
want of equity.

Complainants are eight Pottawatomie Indians, mem-
bers of the Pokagon Band and residents of Michigan.
They undertake to sue "on behalf of themselves and of all
members of the Pokagon Band of Pottawatomie Indians,
and of all other members of the Pottawatomie Nation of
Indians, if any are entitled to join herein with them, and
of all others, if any, who are entitled to join herein with
them."

Defendants are the City of Chicago and certain corpora-
tions now occupying valuable lands within the geograph-
ical limits of Illinois, which have been reclaimed from
Lake Michigan.

The bill proceeds upon this theory—

That from time immemorial, on August 3, 1795 and

thereafter, the Pottawatomie Indians were the owners and
in possession as a sovereign nation, as their country, of
large tracts of land around and along the shores of Lake
Michigan, south of a line running from Milwaukee River,
Wisconsin, to Grand River, Michigan, and extending,
"east and west of said two points and including all of
Lake Michigan which is south of said line"—a stretch of a
hundred miles.

That by the Treaty of Peace entered into at Greenville,
Ohio, August 3, 1795, the United States relinquished to
the Pottawatomie and other tribes their claims to Indian
lands westward of a designated line passing through the
State of Ohio and lying, "northward of the river Ohio,
eastward of the Mississippi, and westward and southward
of the Great Lakes and the waters uniting them, according
to the boundary line agreed on by the United States and
the king of Great-Britain, in the treaty of peace made
between them in the year of 1783."

That by later treaties the Pottawatomie Nation receded
to the United States all such lands up to the shores of
Lake Michigan, but those within the geographical limits
of Illinois which were formerly beneath the waters of Lake
Michigan, "whether reclaimed, artificially made, or now
or formerly submerged . . . . have remained and still
are the property of these complainants, . . . . and
any attempts on the part of any persons, firms, and corpo-
rations to appropriate the same, or any part thereof were
and are in violation of said treaties and of the rights of
these complainants."

That in 1833, with the exception of the Pokagon Band,
in pursuance of a treaty with the United States, the
Pottawatomie Nation migrated west of the Mississippi
River leaving that band in possession, occupation, control
and sovereignty of so much of the nation's original coun-
try as remained unceded.

That the United States has refused to purchase the re-

claimed lands and consequently complainants are at liberty to occupy, sell, lease, or dispose of the same as their own in fee simple.

The bill prays that defendants be enjoined from occupying or building upon the specified land or from asserting any claim, title, or interest therein; that they be required to pay a reasonable compensation for its use; and that the complainants' title thereto be quieted, established and confirmed.

The only possible immemorial right which the Pottawatomie Nation had in the country claimed as their own in 1795 was that of occupancy. *Johnson* v. *McIntosh*, 8 Wheat. 543. If in any view it ever held possession of the property here in question we know historically that this was abandoned long ago and that for more than a half century it has not even pretended to occupy either the shores or waters of Lake Michigan within the confines of Illinois.

By the Treaty of Greenville the United States stipulated with the Pottawatomies and other Indians that generally in respect of a large territory westward of a line passing through Ohio, "The Indian tribes who have a right to those lands, are quietly to enjoy them, hunting, planting, and dwelling thereon so long as they please, without any molestation from the United States; but when those tribes, or any of them, shall be disposed to sell their lands, or any part of them, they are to be sold only to the United States; and untill such sale, the United States will protect all the said Indian tribes in the quiet enjoyment of their lands against all citizens of the United States, and against all other white persons who intrude upon the same." We think it entirely clear that this treaty did not convey a fee simple title to the Indians; that under it no tribe could claim more than the right of continued occupancy; and that when this was abandoned all legal right or interest which both tribe and its members had in the

territory came to an end. *Johnson* v. *McIntosh*, 8 Wheat. 543, 584, 586, 588; *Mitchel* v. *United States*, 9 Pet. 711, 745; *United States* v. *Cook*, 19 Wall. 591, 592; *Beecher* v. *Wetherby*, 95 U. S. 517, 525.

It is unnecessary to consider other reasons suggested by counsel in support of the decree below.

*Affirmed.*