## FEDERAL COAL CO. v. ROYAL BANK OF CANADA.

(Circuit Court of Appeals, Second Circuit. February 1, 1926.)

No. 158.

1. Banks and banking ⊜⟹191—Letter of credit not irrevocable for one-year period merely because postscript thereto prescribed its duration to be one year.

Where buyer wrote defendant bank, requesting it to open credit with J. Bank for plaintiff, such letter, when accepted by defendant, was not irrevocable for one year merely because postscript thereto provided it was to be in effect for one year.

2. Banks and banking ⊜⟹191—Bank's obligation under letter of credit held revocable, where it provided credit was to be on same conditions as another letter which was revocable.

Where buyer wrote bank, requesting it to establish credit on same conditions as credit opened with H., the conditions of the H. letter became a part of bank's obligation on its acceptance, and, where H. letter established only a revocable credit, bank's obligations were revocable, especially in view of obligee's failure to object, when advised of bank's revocation and cancellation thereof.

3. Witnesses ⊜⟹345(2)—Evidence of conviction of witness for theft committed after taking of deposition admissible.

Evidence of conviction of witness for theft committed 28 days after taking of his deposition was admissible, as throwing light on witness' moral nature.

4. Witnesses ⊜⟹345(2)—Conviction of theft in Cuba competent to discredit witness on civil trial in federal court.

Record of conviction of witness for theft in Cuba held competent to discredit witness on civil trial in federal court; fact that conviction was in foreign state being no objection, as long as it was obtained in country where civilized jurisprudence prevailed.

5. Judgment ⊜⟹199(3)—Sufficiency of evidence not raised on motion for judgment non obstante veredicto, and verdict conclusive if material issue was involved.

Where plaintiff did not ask for direction of verdict, but moved for judgment non obstante veredicto, the question of sufficiency of proof did not arise, and the verdict was conclusive, if there was a material issue involved.

6. Appeal and error ⊜⟹879—Additional assignments of error by trustee in bankruptcy not considered, where not contained in record, and trustee did not appear as party.

Additional assignments of error contained in brief of trustee in bankruptcy of plaintiff, who was appointed after commencement of suit, could not be considered, where such assignments did not appear of record, and trustee did not appear as party.

**7. Pleading** ⬥34(4).

Pleadings are no longer construed in hostile sense, but to reach their true meaning.

**8. Judgment** ⬥199(2)—**Answer held not to admit alleged oral contract to extend letter of credit to purchase of coke, so as to require granting of motion non obstante veredicto.**

In action against bank on alleged oral contract to extend letter of credit to purchase of coke, answer *held* not to admit such extension, so as to require granting of motion for judgment non obstante veredicto.

**9. Judgment** ⬥199(3)—**Plaintiff's motion for judgment non obstante veredicto lies only when, on pleadings, defendant has made no defense, and does not search evidence.**

Plaintiff's motion for judgment non obstante veredicto lies only when, on pleadings, defendant has made no defense, and it does not search the evidence, for it is in substance a substitute for a demurrer to the plea, and presupposes that the declaration has been confessed.

**10. Judgment** ⬥199(2)—**Plea alleging cancellation, stating good defense, judgment non obstante veredicto properly refused, despite claimed admission of contract.**

In action against bank on alleged oral contract to extend letter of credit to purchase of coke, as plea that contract had been canceled stated a good defense, plaintiff's motion for judgment non obstante veredicto was properly refused, even though making of contract was admitted.

**11. Judgment** ⬥199(2)—**General verdict for defendant goes to all pleas in answer, and judgment non obstante veredicto properly denied, if some pleas good.**

General verdict for defendant goes to all pleas of defendant's answer, and where defendant in any plea stated good defense, motion for judgment non obstante veredicto should be denied.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Federal Coal Company against the Royal Bank of Canada. Judgment for defendant, and plaintiff brings error. Affirmed.

On writ of error to the District Court for the Southern District of New York from a judgment dismissing the complaint in an action at law in contract. The complaint as amended set up two causes of action—the first for the repudiation of a letter of credit executed on September 6, 1920; the second for refusal to pay certain drafts drawn for the sale of coke, to which the aforesaid letter had been extended by oral contract between the parties, and for repudiating the agreement so extending the letter.

The facts disclosed at trial were as follows: The plaintiff, in 1920, was engaged in mining, buying, and selling coal, and was dealing in part through a broker named Barr, at Jacksonville, Fla. In September of that year Barr was negotiating for the sale of a large amount of coal in Cuba. Through his intervention, on September 11th, the plaintiff closed a contract, dated September 9th, with a Cuban corporation for the sale of 100,000 tons, delivery f. o. b. on cars at its mines. The contract required the buyer to establish a credit with the defendant and to pay cash by honoring drafts drawn by Barr with documents attached.

In the negotiations leading up to the contract Barr told the Cuban company that it would be conditional upon the establishment of such a credit, whereupon, on September 6th, Pujol, the buyer's president, wrote a letter to the defendant, which he submitted in person, and which is the basis of the suit. It recited that the buyer had closed a contract with Barr, and asked the defendant to open a "credit" with a Jacksonville bank "under the same conditions as the credit you opened for us with Robt. P. Hyams, Inc., of New Orleans." It described the amounts of the proposed shipments, and provided that the bank should pay Barr's drafts upon itself, the buyer, which the Jacksonville bank was to accept. The defendant was also to guarantee Barr's drafts for freights. It concluded with a postscript as follows: "These credits to be in effect for one year from this date." On the bottom of this letter the defendant wrote the letters "O. K." and signed its name, upon which Pujol took away the letter, telling the defendant that he would show it to the plaintiff to procure the contract.

On the next day the defendant wrote to the Jacksonville bank: "We hereby beg to establish a revocable credit, by which you are authorized to guarantee payment at maturity of drafts drawn * * * by Walter L. Barr. * * * Also please guarantee Mr. W. L. Barr's sight draft * * * for the amount of freight of each shipment, * * * the above credits to be in effect until September 7, 1921." Barr showed the defendant's letter of September 6th to the plaintiff on September 11th, who, upon seeing it, signed the contract, and wired the defendant on that day that it had made the contract with the buyer for 100,000 tons of coal "one year, you to place credits for coal and freight per their letter sixth to you." On the 13th the defendant replied, saying that they had opened a credit in favor of the Jacksonville bank to

the account of Barr; "this credit will run for one year."

In the previous November the defendant had established a revocable credit in favor of the buyer for the period of a year in favor of Robert P. Hyams, of New Orleans. This letter was in substantially the same terms as the letter of September 7th from the defendant to the Jacksonville bank.

Shipments were made in October and November, which the defendant paid, and for which it was eventually indemnified by the buyer. As the value of coal was steadily falling, the defendant canceled the credit on December 2d, to be effective in 30 days. The question under the first cause of action is of the defendant's right so to cancel, it being conceded that all drafts were paid which were presented before the cancellation took effect. The District Judge dismissed the cause of action, because the revocation was within the terms of the letter.

The second cause of action rests upon a supposed oral extension of the defendant's letter of credit to coke contracts between the plaintiff and the buyer. This depended upon an oral interview between Pujol and one Chrosniak for the plaintiff and one Thompson for the defendant, Chrosniak swore that Pujol had told Thompson that he had entered into a contract for 5,000 tons of coke with the plaintiff, and that he asked him for a second letter of credit on this transaction. Thompson replied that this was unnecessary, as he thought the coke was already covered by the terms of the letter of credit of September 6th. Pujol corroborated Chrosniak. The defendant did not call Thompson to contradict this story, and the plaintiff did not move for a verdict at the close of the evidence. The jury found for the defendant, and thereafter the plaintiff moved for judgment non obstante veredicto on the ground that the extension of the letter to the coke contract was not in issue. This the court denied; the correctness of the ruling involves a consideration of the pleadings, which appears in the opinion.

The other error assigned is the admission of a certificate of the conviction by a Cuban court of Pujol for theft committed 28 days after the taking of his deposition for use in the case at bar.

After the suit was brought, the plaintiff became bankrupt, and a trustee was appointed, but no substitution made.

Cadwalader, Wickersham & Taft, of New York City (George Coggill and G. Forrest Butterworth, Jr., both of New York City, of counsel), for plaintiff in error.

Charles C. Moore, of Chattanooga, Tenn., for trustee in bankruptcy.

William E. Sims and Charles M. Kritzman, both of New York City, for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). We can see no reasonable question of the correctness of the court's ruling upon the first cause of action. Indeed, the letter of September 6th was not intended to be the permanent obligation of the defendant, but only a contract with the buyer to write a letter of credit to the Jacksonville bank, which it did on the next day, and which was intended to be performance of the contract laid in the complaint. However, we see no reason to press this feature of the cause, and do not mean to rest our decision upon it, or upon any rights which its analysis might disclose. We are content, for argument, to accept the plaintiff's position, and to say that it was a letter of credit, at least a contract for the benefit of the plaintiff, on whose repudiation it might sue.

[1] The question then becomes whether the defendant had the right of revocation under its terms. Its duration appears only in the postscript, which says that the credit shall be in effect for a year. The plaintiff's argument depends upon the assumption that at least prima facie this made the letter irrevocable while it ran, and that the incorporation by reference of the former letter, written at the buyer's instance in favor of Hyams, must be so limited as not to contradict the period so expressed. We should hardly assent to that construction of the letter, even if a revocable letter never had a period of its own; that is, if it must be for an indefinite time. But that is quite contrary to any reasonable understanding of such documents. A letter of credit, whether revocable or not, so far as we know, is always given a limited duration; at least, it is natural to give it one, and there is no reason to infer that a letter is irrevocable merely because it has a limit. It may or may not be.

[2] At any rate, there is no warrant for circumscribing the reference to Hyams' letter of the year before. The phrase, "under the same conditions," can scarcely be treated as inapt to include the vital feature of revocability, nor can we see any but an arbitrary basis for the plaintiff's argument that it could refer only to the defendant's security, its commissions, interest, and "other compensations." None of these particulars are con-

tained in the Hyams letter, which, indeed, adds little of consequence to the terms set out in the letter of September 6th, except the very provision for revocation.

We do not, of course, mean that in this or in any other contract the intent of the parties is material, or that they are not to be held according to the meaning which courts will impute to their words; but we say that no one reading the letter of September 6th would be justified in concluding that it incorporated the complete understanding of the parties. Whatever were the conditions in the Hyams letter, they were to be a part of the defendant's undertaking. The parties, of course, so understood it, and any one who acted upon it acted at his peril in ignoring the contents of the other document. Indeed, if there could be the least uncertainty that this was its necessary meaning, the plaintiff has answered it. The Jacksonville bank knew of no letter but that of September 7th, and a question arose of the time of the revocation allowed by its terms. On November 1st, the bank, having got a letter from the defendant that it would only revoke on 30 days' notice, communicated this to the plaintiff. Again, when the defendant canceled the letter on December 2d, the bank at once advised the plaintiff. To neither of these communications did the plaintiff raise any objection at the time, or, so far as we can find, during the month of December. In the face of such admissions, we should have to find far greater ambiguity in the language of the letter of September 6th than appears. The District Judge was altogether right in supposing that the defendant's obligations were revocable, whichever was the document that created them, and the judgment upon the first cause of action is affirmed.

[3] The first question as respects the second cause of action is of the admission of Pujol's conviction in Cuba. The fact that the crime was committed about a month after his testimony was given appears to us of not the slightest moment. The relevancy of the testimony depends upon its probative value in estimating Pujol's credibility. Plainly it is as rational to conclude that he was of a dishonest disposition, because he was convicted of a crime committed within a month after he testified, as if it had been a month before. The notion is that the crime throws light on the witness' moral nature. The force of the inference is no doubt affected in some degree by the intervening period between the commission of the crime and the testimony; but the competency of the proof cannot be so de-

termined, and, if it could, so short a period would not on any theory be of the least probative significance.

[4] The more serious question is whether a conviction for theft in Cuba is competent to discredit a witness on a civil trial in a federal court. That the crime is of a suitable kind to discredit the witness' veracity admits of no doubt and is not disputed. On no rational principle can it make any difference that the conviction took place in another country, provided that it was civilized, and that its judicial proceedings were likely to result in a true conclusion. Cases like Logan v. U. S., 144 U. S. 263, 12 S. Ct. 617, 36 L. Ed. 429, are not in point, because the competency of a witness is by no means the same thing as the evidence which impeaches his credibility. Curiously enough we have found no case in point, certainly none in New York, because cases like Sims v. Sims, 75 N. Y. 466, and National Trust Co. v. Gleason, 77 N. Y. 400, 33 Am. Rep. 632, concerned only the competency of witnesses. However, it was ruled in Commonwealth v. Knapp, 9 Pick. (Mass.) 496, 20 Am. Dec. 491, that a conviction in another state was competent to impeach a witness, and this was followed in Attorney General v. Pelletier, 240 Mass. 264, 134 N. E. 407. The same ruling was made in Ball v. U. S., 147 F. 32, 78 C. C. A. 126 (C. C. A. 9). There can be no rational distinction between a conviction in another state and one in a foreign country, so it be one in which civilized jurisprudence obtained. We think that the record was properly admitted.

[5, 6] There remains only the question of the motion non obstante. As the plaintiff did not ask for the direction of a verdict, the question does not arise to the sufficiency of the proof, and the verdict is conclusive, if there was a material issue. Moreover, no assignment of error was taken to the error, if any, in taking the verdict. In the brief of the trustee in bankruptcy are contained certain "additional assignments of error." These are not in the record, and the trustee does not appear as a party. If he did, we should decline to recognize any such "added assignments"; nor are we disposed to take notice nostra sponte, under our tenth rule, of any of the matters contained in them. We confine ourselves to the question whether the plaintiff's motion non obstante should have been granted.

[7, 8] The theory is that the defendant's pleas admitted that the letter of credit was extended to the coke contract between the Cuban corporation and the plaintiff. The

trustee has been at pains to prove that under the law of New York in such a case the traverses raise no issue. We find it unnecessary to consider that question. The complaint alleged in article 4 a promise to pay the prices in the coal contract, and in article 10 a separate promise to pay the prices in the coke contract. The plaintiff must recover on these allegations, or not at all, for we have nothing to do with the evidence on this motion; that is, we will not look at the letters of September 6th or September 7th. Concededly the tenth article was traversed.

The contradictory admissions in the pleas relied upon are those in articles XIX, XXI, and XXIII of the answer. Article XIX alleged that "the agreements and the promises described in paragraphs [sic] IV and X of the complaint were by their terms revocable at the option of the defendant. On and after December 1, 1920, defendant canceled and revoked said agreements and promises." This is not an admission that any promises were in fact made, but relates to the terms in which those alleged ("described") were cast. It is consistent with the traverse to article X of the complaint. Article XXI alleged that "the agreements and promises alleged to have been made by defendant were made solely for the purpose of facilitating and guaranteeing payments to be made by Aponte & Rojo Coal Company to plaintiff for coke." Taken strictly, it is no doubt true that the effect of these words is to say that the alleged agreements were made, but were made for a limited purpose. We shall consider this later. Article XXIII alleged that "by the terms of the alleged agreement referred to in paragraphs [sic] IV and X of the complaint defendant agreed to guarantee plaintiff that Aponte & Rojo Coal Company would at maturity pay all drafts drawn upon it by Walter L. Barr." This does not admit that an agreement was made, but that the terms of that alleged ("referred to") made it a guaranty.

It is plain, from the whole answer, that the pleas in which these articles occur were drawn by a careless pleader, unlike him who drafted the tenth to fourteenth pleas, inclusive, in which the allegations read, "the promise in the complaint, if any such promise was made," which avoided any admission. A single slip has made one admission, article XXI, that the agreements alleged were in

fact made, and general inexpertness makes the meaning open to verbal question in articles XIX and XXIII. But we no longer dispose of substantial rights by such logomachy. The intent of the answer as a whole is perfectly apparent, especially since we no longer construe pleadings in a hostile sense, but to reach their true meaning. It is plain that the pleader did not mean to retract the traverse in the sixth article, but to allege that, if the issue should go against him, still he had a defense in the revocation of the coke contract between the plaintiff and the Cuban buyer. We decline to treat the language used as an admission of facts once expressly denied, and repeatedly reserved from admission in other pleas.

[9-11] But there is another complete answer to the plaintiff's position. The plaintiff's motion non obstante veredicto only lies when on the pleadings the defendant has made no defense; it does not search the evidence. U. S. v. Gardner, 133 F. 285, 66 C. C. A. 663 (C. C. A. 9). It is in substance a substitute for a demurrer to the plea, and presupposes that the declaration has been confessed. It was, indeed, said in Pim v. Grazebrook, 2 C. B. 437, 445, that it never lies when there has been a material traverse, which, if true, finally disposes of the plaintiff's motion. However, we need not go so far, and for argument's sake we will say that the confession overcomes the traverse, not as evidence, but as pleading. Even so, the plea must itself be bad in substance. Clears v. Stevens, 8 Taunt. 413; Pim v. Grazebrook, supra; Bellows v. Shannon, 2 Hill (N. Y.) 86; Ward v. Phillips, 89 N. C. 215; Sternberg v. First National Bank, 280 F. 863 (C. C. A. 3); Stephen on Pleading, § 95 (3). Here the sixth plea is good, because it alleges that the contract between the Cuban buyer and the plaintiff was canceled before December 2d, and that for all coke ordered before that time the plaintiff had been paid. Moreover, the verdict, being general, goes to all the pleas, others of which were good in law.

The motion is not favored, and was a clear afterthought. Had the plaintiff intended to make use of any such subtleties, it should have raised the question before verdict. The judgment on the verdict as to the second cause of action is affirmed.

Judgment affirmed.